Syllabus.

# THE PEOPLE *ex rel.* George W. Brackett

*v.*

## DANIEL McGOWAN.

1. EVIDENCE—*parol, to impeach record of naturalization.* The record of the naturalization of an alien, like any other record of a court, imports verity, and can not be impeached for fraud unless that defense has been specially pleaded, setting forth in what the fraud consists.

2. In an information in the nature of a *quo warranto*, filed against one elected judge of a city court, the defendant pleaded, admitting that he was alien born, but averring that he was naturalized in the Criminal Court of St. Louis, at a regular term, that court having jurisdiction to admit aliens to citizenship. The relator replied that the court had not jurisdiction to naturalize the defendant, and *nul tiel record*. On the trial, the people offered to prove that the defendant, prior to the date of the order of naturalization, had made no previous declaration of his intention to become a citizen; that he emigrated to the United States after he was 21 years of age; that he had never served in the army or navy of the United States, and that he had not resided in the State of Missouri one year previous to his application to become a citizen, which evidence the court excluded: *Held*, that the court properly excluded the evidence.

3. NATURALIZATION—*impeaching collaterally.* A record of naturalization, made by a court of competent jurisdiction, can not be impeached, in a collateral proceeding, by showing by parol that the preliminary steps required by law had not, in fact, been taken. It will be presumed that the court heard evidence, and was satisfied that the applicant had complied with the law, and its findings must be held conclusive as to all facts recited in the record.

4. SAME—*jurisdiction of the Criminal Court of St. Louis.* The Criminal Court of St. Louis, being a court of record, having common law jurisdiction of a certain class of cases, a seal and a clerk, has jurisdiction, under the acts of Congress, to admit aliens to citizenship.

5. SAME—*what courts have jurisdiction.* The State courts mentioned in the act of Congress as having common law jurisdiction, are such as exercise their powers according to the course of the common law. It was not meant they should have all common law jurisdiction over every class of subjects, including all civil and criminal matters.

6. The courts authorized by the act of Congress to admit aliens to citizenship need not possess general, common law jurisdiction over all classes of actions, but must be courts of record for all purposes, possessing powers incident to such courts with common law jurisdiction over all subjects

upon which they have authority to adjudicate, and must exercise their powers according to the course of the common law.

7. SAME—*former decision overruled.* The case of *Knox County* v. *Davis*, 63 Ill. 405, so far as it holds that county courts in this State, as organized under the constitution of 1848, had no jurisdiction to admit aliens to citizenship, being in conflict with the weight of authority, is overruled.

APPEAL from the Circuit Court of St. Clair county; the Hon. WILLIAM H. SNYDER, Judge, presiding.

This was an information, in the nature of a *quo warranto*, on the relation of Geo. W. Brackett, against Daniel McGowan. The material facts of the case appear in the opinion of the court.

Messrs. C. W. & E. L. THOMAS, for the appellants.

Messrs. G. & G. A. KŒRNER, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The information alleges Daniel McGowan, at an election held on the 8th day of October, 1874, was regularly elected judge of the city court of East St. Louis; was duly qualified as judge, and entered upon the discharge of the duties of the office; but charges he could not lawfully hold the office of judge of that court, because he was alien born.

The plea filed admits defendant was born an alien to the United States, but avers he was duly naturalized on the 15th day of May, 1867, in the Criminal Court of the county of St. Louis, at a regular term, that court having jurisdiction to admit aliens to citizenship.

Two replications were filed—first, the Criminal Court of the county of St. Louis had not jurisdiction to naturalize defendant, and second, *nul tiel record,* upon which issue was joined.

An exemplification of the record was offered in evidence, which shows Daniel McGowan, a native of Ireland, applied

to become a citizen of the United States, at the May term, 1867, of the Criminal Court of the county of St. Louis, and it appearing he had resided in the United States, and in the State of Missouri, for the requisite length of time, and had complied with the law in all preliminary matters, he was admitted to citizenship, on taking the usual oath of allegiance to this government.

On the trial, the people offered to prove defendant, prior to May 15, 1867, had made no declaration of his intention to become a citizen; that he immigrated to the United States after he was twenty-one years of age; that he had never served in the army or navy of the United States, and that he had not resided in the State of Missouri one year previous to his application to become a citizen, which evidence was excluded by the court.

In the exclusion of this testimony, the court ruled correctly. The record of naturalization of an alien, like any other record of a court, imports verity. It can not be impeached for fraud unless that defense has been specially pleaded, setting forth in what the fraud consists. No replication had been filed alleging fraud, nor that the court had not jurisdiction of the person of defendant. The replication as to jurisdiction is, that the court did not have jurisdiction of the subject matter, but does not put in issue the jurisdiction of the court as to the person of defendant; hence, the evidence was properly rejected. But had the issue been made by the pleadings, we are still of opinion the evidence was inadmissible. It seems clear, both on principle and authority, a record of naturalization, made by a court of competent jurisdiction, can not be impeached, in a collateral proceeding, by showing that the preliminary steps required by law have not, in fact, been taken. It is upon the principle such a record, like any other judgment of a court, affords complete evidence of its own validity. In proceedings of naturalization, matters are submitted to the decision of the court, and the presumption will be indulged the court heard evi-

dence, was satisfied the applicant had complied with the law, and its findings must be held conclusive as to all facts recited in the record. *Spratt* v. *Spratt*, 4 Peters, 393; *The People* v. *Pease*, 30 Barb. 588; *Campbell* v. *Gordon and Wife*, 6 Cranch, 176; *McCarthy* v. *Marsh*, 1 Selden, 263.

But the principal question in the case is, whether the Criminal Court of the county of St. Louis had jurisdiction to admit aliens to citizenship. Under the act of Congress, any State court, being a court of record, having common law jurisdiction, a seal and a clerk or prothonotary, has jurisdiction in matters of naturalization of aliens. Our inquiry, then, is, whether the Criminal Court of the county of St. Louis comes within the definition of State courts mentioned in the act of Congress on that subject.

The Criminal Court of the county of St. Louis was established by an act of the General Assembly of the State of Missouri, passed in 1855, and was given all the original and appellate jurisdiction which had been vested in the several circuit courts of the State. It is a court of record, having a seal and a clerk, and was given all the powers, was to perform all the duties, and be subject to the restrictions of courts of record as such, according to the provisions of the laws of the State. The judge of the court was made a conservator of the peace, with powers to issue writs of *habeas corpus* and determine the same, to administer oaths, take and certify recognizances, and exercise all the powers of an examining magistrate. Gottschalk's Laws, p. 89. Subsequently, by an act of the legislature, the Court of Criminal Correction in St. Louis county was established, and was given exclusive, original jurisdiction of all misdemeanors under the laws of the State of Missouri, committed in the county of St. Louis, the punishment of which is by fine or imprisonment in the county jail, or both, except in cases of assault and battery and affrays, but did not otherwise affect the jurisdiction of the Criminal Court. Gottschalk's Laws, p. 100.

It will be observed the Criminal Court of the county of St. Louis answers, in every particular, the description of State courts designated in the act of Congress, which are given power to naturalize aliens, if it has "common law jurisdiction." We have no courts in this country that derive their existence from the common law. Our State courts are all created by the organic law, or by legislative enactment. Their jurisdiction is not uniform. Some of our courts have only a statutory or special jurisdiction, limited as to subjects and amounts in controversy; others have original common law jurisdiction, unrestricted as to class of cases and as to amounts in controversy. But our State courts, having what is called common law jurisdiction, have not that jurisdiction to the same extent. By no means. We have courts with common law jurisdiction in civil cases only, and others exclusively in criminal causes. It was so with the English courts, that had their origin in, and existed under, the common law, and derived their jurisdiction from that source. Some of them had jurisdiction only in certain classes of actions, and others in different and distinct actions.

Our statutory courts, although they may not have jurisdiction in all cases at law, both criminal and civil, are none the less, for that reason, courts with common law jurisdiction. Their character, in this regard, is not determined altogether by the extent of their jurisdiction as to subjects over which they may adjudicate. We apprehend the State courts mentioned in the act of Congress as having common law jurisdiction, are such as exercise their powers according to the course of the common law. It was not meant they should have all common law jurisdiction over every class of subjects, including all civil and criminal matters. If this were so, it is apprehended but few courts could be found in any of the States that would possess the requisite "common law jurisdiction." As a matter of fact, some subjects are excluded from the original jurisdictions of circuit courts in this State and in the State of Missouri; and perhaps no court in either

State could be found with such extended and unlimited jurisdiction as to include within that jurisdiction all subjects determinable in the various courts, either under the statute or under the common law. It may be accurately said, a court having jurisdiction only in civil cases is, nevertheless, a court of general jurisdiction, although limited to a certain class of cases. The same is true of courts with exclusive jurisdiction in criminal causes, with no civil jurisdiction. Such courts may and do exercise their respective powers according to the course of the common law, and their jurisdiction may, with as much propriety as with many of the common law courts of England, be said to be general.

Reference to the act of the legislature in evidence, creating the Criminal Court of St. Louis county, shows the circuit court of St. Louis county was thereafter prohibited from exercising original jurisdiction in any criminal case, or appellate jurisdiction of any case tried or determined before a justice of the peace or other magistrate. By positive statute some matters are excluded from the jurisdiction of circuit courts in this State; but can it, with any propriety, be said these courts are not, for that reason, courts of general jurisdiction? The proposition, it seems to us, would be absurd. The circuit court and the Criminal Court of St. Louis county were created by positive law, and both courts may have had jurisdiction given by statute, but that does not militate against the proposition they have general, common law jurisdiction over all matters submitted to them, and exercise not only statutory powers, but powers derived from the common law.

It was pertinently said, *In the matter of Martin Courner*, 39 Cal. 98, "the act of Congress does not require that the court shall have all the common law jurisdiction which pertains to all classes of actions. It is enough that it has common law jurisdiction."

In *Morgan* v. *Dudley*, 18 B. Monroe, 693, the court, in an elaborate opinion, said, "the act of Congress, in designating the State courts that have authority to admit aliens to become

citizens of the United States, does not describe them as courts of general, common law jurisdiction, but as courts having common law jurisdiction, and consequently embracing all that have either limited, or general, common law jurisdiction."

In *Ex parte Gladhill*, 8 Metc. 168, it was held, Chief Justice SHAW delivering the opinion of the court, that the Police Court of ·Lowell, being a court of record, having a seal and clerk, and being vested with all the civil and criminal jurisdiction of justices of the peace, was a court of common law jurisdiction, within the meaning of the act of Congress, with power to admit aliens to become citizens of the United States.

In *The People* v. *Pease*, 30 Barb. 588, one question was, whether the county courts in New York had jurisdiction, under the act of Congress, in matters of naturalization. The court said: " The county court has common law jurisdiction in the revision of all judgments given in justices' courts. The Court of Appeals is a court of general, common law jurisdiction, and yet it has no original jurisdiction. The county court, as an appellate court, is in like manner a court 'having common law jurisdiction.' " Allusion is made, in the opinion ·of the court, to a decision made by Mr. Justice McLEAN, of the Supreme Court of the United States, holding that the probate courts of the several counties in Ohio had jurisdiction in naturalization proceedings, which is said to have been published in the "Law Gazette," but we have not been able to find the case reported anywhere.

In *Ex parte Burkhardt*, 16 Tex. 470, it was declared, the county courts of that State. though of limited· jurisdiction, yet had common law jurisdiction, within the meaning of the act of Congress.

In *Mills* v. *McCabe*, 44 Ill. 194, it was held. the " Marine Court of the city of New York" was not a court of record, within the meaning of the act of Congress conferring jurisdiction upon State courts to admit aliens to citizenship. That court was created by statute. its jurisdiction defined, and, as we understand, was a court of record for some purposes, but

not for all. The proceedings on trial were informal, the pleadings oral, and, in technical strictness, there was no judgment roll. *De LaFaniers* v. *Jackson,* 4 E. D. Smith, 477.

It was in view of the fact the courts of New York had thus characterized the "Marine Court," declaring its proceedings in part oral, that this court, in its opinion, said: " Having been decided by competent authority to be a court of record only to the extent that it was declared by statute, and not to possess other powers incident to such a court, we are not authorized to hold it a court of record," and it was then added, "a fair and reasonable construction of the act of Congress requires us to hold that only a court of record for general, and not special, purposes, was intended to be embraced."

The case of *Knox County* v. *Davis,* 63 Ill. 405, declares, the court intended to be embraced in the act of Congress was one that exercised a general, although it might be a common law, jurisdiction, limited as to the sum or amount in controversy, and it may be where some kinds of actions are excluded. The conclusion was, the county courts in this State, as organized under the constitution of 1848, did not have jurisdiction to admit aliens to citizenship, and the reason assigned is, that court had no general, common law jurisdiction in any matters. It is conceded those courts exercised a general and unlimited jurisdiction in the settlement of estates, and in all matters pertaining thereto, but that jurisdiction. it is said, was strictly statutory. The common law jurisdiction, in actions of debt and assumpsit, was limited to certain persons in their official capacity. and limited also as to the sum or amount in controversy, and hence the conclusion was reached it had no common law jurisdiction, within the meaning of the act of Congress.

But we are satisfied, on more mature reflection and a fuller examination of the reported cases. that this case, in so far as it held the county courts of this State. as organized under the constitution of 1848, had no jurisdiction to grant naturalization, is in conflict with those authorities, and that it should

be overruled, and so modified as to conform to the construction generally given to the act of Congress upon the subject of naturalization, which, under the constitution, should be uniform. The construction of the act should be, as far as practicable, uniform by the decisions in the several States, that naturalization of aliens, valid by the decisions of the courts of one State, may not be declared invalid by the courts of another State.

It seems clear, upon authority, as well as upon construction of the federal statute, the courts designated in the act of Congress which have jurisdiction conferred upon them to hear and determine applications for naturalization, need not possess general, common law jurisdiction over all classes of actions, but must be courts of record for all purposes, possessing powers incident to such courts, with common law jurisdiction over all subjects upon which they have authority to adjudicate, and must exercise these powers according to the course of the common law.

Our conclusion is, the Criminal Court of the county of St. Louis is such a court, and it being shown to have "common law jurisdiction," within the meaning of the act of Congress in relation to naturalization, it was, therefore, competent to admit defendant to all the rights of citizenship.

The judgment of the circuit court must be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BREESE: I do not concur in this opinion.