UNITED STATES *v.* LEHMAN.

(*District Court, E. D. Missouri, E. D.* June 10, 1889.)

1. COURTS—JURISDICTION—ALIENS.

Rev. St. U. S. § 2165, confers the power to naturalize aliens on "courts of record of any of the states having common-law jurisdiction." 2 Rev. St. Mo. 1879, p. 1511, establishing the court of criminal correction, declares it to be a court of record, and gives it "exclusive original jurisdiction of all misdemeanors under the laws of the state committed in the county (now city) of St. Louis." *Held,* that as the common law and all general statutes enacted by parliament before the fourth year of the reign of James I. have been adopted in Missouri, and as the proceedings of the court are in accordance with common law except as modified by the Code of Criminal Procedure, the court is one of common-law jurisdiction, and authorized to naturalize aliens.

2. ALIENS—NATURALIZATION—PERJURY.

Rev. St. U. S. § 2167, requires the court to ascertain whether the applicant for naturalization under that section has resided three years in the United States before attaining majority. *Held,* that a third person, swearing falsely in that regard, is liable to the penalty prescribed in section 5424 for any witness who in such proceeding falsely makes an oath "required or authorized" by the naturalization laws.

3. SAME—INDICTMENT.

An indictment for such offense, alleging that the person who administered the oath was a deputy-clerk of the court of criminal correction, and acting as such when the oath was administered in open court, is sufficient without alleging the steps by which the officer became deputy-clerk.

4. SAME.

As the district court of the United States takes judicial notice of the laws of the state in which it is situated, an allegation that the deputy-clerk was authorized to administer such oath is not necessary.

At Law. Demurrer to indictment.

*George D. Reynold,* Dist. Atty., and *Thomas P. Bashaw,* for the United States.

*D. P. Dyer,* for defendant.

THAYER, J. 1. The first question raised by the demurrer filed in this case is whether the court of criminal correction of the county (now city) of St. Louis has power to naturalize aliens. Section 2165, Rev. St. U. S., confers such power on "courts of record of any of the states having common-law jurisdiction." The court of criminal correction is declared to be a court of record by the second section of the act establishing that court. 2 Rev. St. Mo. 1879, p. 1511. Hence the sole point for consideration is whether it is also a court "having common-law jurisdiction" within the meaning of the federal statute. That is a question, as it appears to me, that admits of little controversy. The jurisdiction of all the courts in this and other states is defined with greater or less particularity by statute, and in that sense their jurisdiction is statutory. But, as is well known, certain courts in this as well as in other states have power to punish offenses that existed at common law, and to enforce private rights and to redress private wrongs recognized by the common law, and in the exercise of that power their action is governed by the principles, rules, and usages of the common law, in so far as they have

not been modified or abolished by statute. Courts of this description are usually termed "courts of common-law jurisdiction," to distinguish them from other inferior tribunals organized to enforce local or municipal regulations, or rights and duties not recognized by the common law. Section 2165 evidently refers to courts exercising the jurisdiction first above described. Congress intended to confer the power of naturalization on all courts of record of the several states that have power to administer justice under and in accordance with that system of jurisprudence known as the common law. *In re Conner*, 39 Cal. 98. Tried by such test the court of criminal correction has power to naturalize aliens. It is a state court, and not a municipal court. It issues process in the name of the state that may run and be executed in any part of the state. The judge of the court has power to issue writs of *habeas corpus*; its proceedings are conducted according to the course of the common law, in so far as the practice at common law has not been modified by the Code of Criminal Procedure adopted in this state; and it has "exclusive original jurisdiction of all misdemeanors under the laws of the state committed in the county (now city) of St. Louis." As the common law and all general statutes enacted by parliament prior to the fourth year of the reign of James I. have been expressly adopted in this state, it follows that the court of criminal correction has power to punish acts that were misdemeanors at common law, although they have not been expressly declared to be misdemeanors by any law of this state. It must accordingly look to the common law in a measure, to ascertain the extent of its powers, and is just as truly a court of common-law jurisdiction as the circuit court of the state.

2. It is further insisted that the oath alleged to have been made by the defendant was not required to be made by any provision of the naturalization laws, and hence that no offense was committed under section 5424 of the Revised Statutes, on which the indictment is predicated, even though the oath was false. With respect to this contention it will suffice to say that an offense was committed under section 5424 if the oath alleged to have been made by the accused was either "required or authorized" by the naturalization laws, and if the same was false. According to the view taken of the question raised by the point of the demurrer now under consideration, it is unnecessary to decide whether an applicant for naturalization under section 2167 must prove his residence in the United States for three years before attaining his majority by the oath of some third party, as required by the third subdivision, § 2165, or whether the law permits the applicant to prove that fact by his own oath. That, in my opinion, is an immaterial question, so far as the demurrer is concerned. Section 2167 at least requires the court before whom the application for admission to citizenship is made to ascertain that the applicant has resided in this country for the requisite period of three years before attaining his majority. That is the basal fact on which the right to naturalization depends. It does not provide that such fact shall be established only ,by the oath of the applicant, or that no other testimony shall be received. Hence, according to

any view that may be taken of the subject, the court is at least "authorized" to hear testimony other than that of the applicant, touching the fact of residence, and it must do so if the construction contended for by the government is to prevail. A person who is called upon by an applicant for naturalization to testify as to the fact of residence for three years, as specified by section 2167, cannot, in my judgment, defend against an accusation of having made a false oath in that regard, upon the ground that the oath was not "required" by the naturalization laws, inasmuch as the applicant might have established the fact by his own oath. An oath so taken is at least an "authorized oath." The courts before whom such proceedings are had may desire other testimony than that of the applicant to establish the fact of residence, and even according to the construction contended for by the accused, it is clear that they have authority to receive, and that it is their duty to demand, such other testimony, when in their opinion the fact to be ascertained is not satisfactorily proven by the applicant's testimony. The only fault that can well be found with the indictment in the matter now being considered is that in alleging that the oath was "required" by the naturalization laws, instead of being "authorized," the pleader alleged more than was necessary to be alleged or proven. The point made, that the oath was "extrajudicial," and that no offense is stated for that reason, is not well taken.

3. A further objection is made to the indictment on the ground that it is not averred that the deputy-clerk of the court of criminal correction, before whom the oath is said to have been taken, was appointed deputy, as required by the act creating the court, or that he was authorized to administer an oath to the defendant. The first of these objections is not tenable. The indictment alleges that the person who administered the oath to the accused was the deputy-clerk of the court, and was acting as such when the oath was administered, and that it was administered in open court. That, in my opinion, is sufficient. It was not necessary to allege the successive steps taken by which the officer became deputy-clerk. The fact alleged, that he was such clerk and was so acting, implies a legal appointment. Everything else connected therewith is evidential, and need not be averred. The second objection mentioned above would be tenable were it not for the fact that the court of criminal correction is so located with respect to this that this court is bound to take judicial notice of its powers and of the authority of its clerk to administer oaths. If the oath had been taken before some officer, of whose power to administer oaths this court is not bound to take judicial notice, the objection would, of course, be fatal. But, inasmuch as the court takes judicial notice of the general laws of the state and of the fact that the deputy-clerk of the court of criminal correction has power to administer oaths to persons appearing as witnesses in that court, I am inclined to the view, and accordingly hold, that the allegation that the accused appeared and was sworn in open court by the deputy-clerk thereof is sufficient, even in an indictment. Certainly the government on the trial will not be bound to prove anything more in the way of establishing

the clerk's authority to administer the oath than that he was the duly-appointed deputy-clerk, and that the oath was administered in the presence of the judge in the course of a judicial proceeding. I can conceive of no sufficient reason why the allegations in a case of this sort should exceed the facts necessary to be proven on the trial.

Some other more technical objections were made to the indictment, which on due consideration do not seem to be well founded. The demurrer is accordingly overruled.