WILLIAM DEAN, PETITIONER to be admitted to citizenship.

York.    Announced at July Term, Middle District, 1890.

Opinion May 29, 1891.

*Naturalization. Biddeford Municipal Court. St. 1855, c. 151; St. 1887, c. 247; Act of Congress, April 14, 1802; R. S., of U. S. § 2165.*

The Municipal Court of the city of Biddeford, January 24, 1888, did not have a clerk within the intent and meaning of the federal statute, (R. S., of U. S., § 2165) and, therefore had no jurisdiction over applications for naturalization of aliens ; and no authority to receive and record their declarations of intention to become naturalized.

ON EXCEPTIONS.

This was a petition of William Dean, an alien, praying for admission to citizenship. The petitioner came to the United States from England after he was eighteen years of age and more

than five years before the date of his petition, intending to become a citizen, and has ever since resided in the United States. More than two years prior to this hearing he had made and filed a declaration of his intention to become a citizen. By the declaration it appeared to have been made before Edwin J. Cram, Recorder of the Municipal Court of the City of Biddeford.

Upon this petition the presiding justice ruled :

(1.) That the Municipal Court of the City of Biddeford, on the twenty-fourth day of January, 1888, was not a court of competent authority under the laws of the United States to admit aliens to naturalization and had no jurisdiction over the application therefor.

(2.) That if said Court at said date had power to naturalize aliens, it does not appear that the petitioner's declaration of intention made before Edwin J. Cram, Recorder of the Municipal Court of Biddeford, on said twenty-fourth day of January, 1888, · was made in compliance with the laws of the United States requiring a declaration of intention to be made by such aliens desiring to be admitted to citizenship.

(3.) That for the reason aforesaid the petition be dismissed.

To these rulings the petitioner excepted.

*W. F. Lunt*, for petitioner.

Counsel argued that the court exercised common law jurisdiction. It is not necessary that it should be full and complete ; it is enough if it may exercise any part of the common law jurisdiction. Counsel cited : 2 Whar. Digest International Law, p. 346 ; *U. S.* v. *Lehman*, 39 Fed. Rep. 49 ; *ex parte, Conner*, 39 Cal. 98 ; *State* v. *Whittemore*, 50 N. H. 245 ; *ex parte, Gladhill*, 8 Met. 168 ; *ex parte, Craig*, 2 Curt. C. C. 98 ; *U. S.* v. *Power*, 14 Blatch. 223 ; *ex parte, Tweedy*, 22 Fed. Rep. 84 ; *People* v. *McGowan*, 77 Ill. 644, (S. C. 20 Am. Rep. 254) ; *Morgan* v. *Dudley*, 68 Am. Dec. 735.

*H. H. Burbank*, contra.

The clerk or recorder, within the meaning of the U. S. statute, must be a person other than the judge. By statute and at common law, the clerk's functions are limited to purely clerical work, and his duties are fixed and imposed by law. They do

not act judicially, and are distinct from an amanuensis, or persons rendering service voluntarily. In his sphere, he is a responsible and independent official. The recorder is, here, a vice-judge. He has no function, clerical or judicial, when the judge is present holding court.

It is impossible for a declaration to be lawfully made by an alien, before a clerk of the Biddeford Municipal Court, because, if done in the court-room, there is but one official authorized to act judicially or clerically, at any particular time; namely, the judge or the recorder when acting as judge, and so there is no clerk distinct from the judge. If done away from the court-room, it might be that the judge was acting in the room and the recorder would be acting without authority.

*R. P. Tapley*, in reply.

The requirements of congress are only to insure a competent tribunal, and a record of its proceedings, so that the evidence may be preserved, &c. This being done, the real purposes of the statute are accomplished; all other things a matter of form. Whether clerk, or recorder, it cannot matter by what name he is called. His powers and duties are defined by the law. There is no absolute requirement that the recording officer shall be a person distinct from the judge. Here, there is an independent recording officer. The court has the means of recording and authenticating its proceedings in all cases. The federal law makes no provision concerning the manner of conducting the business in the court. *Stephens, Pet'r* 4 Gray, 559. The oath of intention may be made before any qualified officer of the court. R. S., of U. S., § 2165; filed before the clerk. Act of 1876. In those cases where the judge performs his judicial functions, and requires the recorder to make the record, it has such clerk, distinct from the judge, and doing that which the judge cannot do, viz: receiving the applications.

WHITEHOUSE, J. This is an application by an alien seeking to become a citizen of the United States. As evidence of the previous declaration of his intention to be naturalized, required by the Act of Congress, the applicant produced a copy of a dec-

laration made by him January 24, 1888, before Edwin J. Cram, Recorder of the Municipal Court of the City of Biddeford, attested by "Edwin J. Cram, Recorder." Under the federal statutes, only those courts that are authorized to naturalize, are authorized to receive and record this declaration of intention. The question here presented, therefore, is whether the Municipal Court of Biddeford was a court of competent authority under the laws of the United States to admit aliens to citizenship. The presiding judge ruled that it was not, and for that reason dismissed the petition.

The federal constitution confers upon Congress the power "to establish an uniform rule of naturalization." In the exercise of this authority Congress enacted the statute of April 14, 1802, prescribing the conditions of naturalization. By that act the preliminary declaration might be made on oath or affirmation "before the Supreme, Superior, District or Circuit court of some one of the States." Then follows this provision in the third section of the act: "*And whereas doubts have arisen* whether certain Courts of Record in some of the States are included within the description of District or Circuit Courts: *Be it further enacted* that any Court of Record in any individual State having common law jurisdiction and a seal and clerk or prothonotary, shall be considered a District Court within the meaning of this act." In section 2165 of the last revision of the United States statutes the courts thus authorized to naturalize aliens are specified and described as follows: "A Circuit or District Court of the United States, or a District or Supreme Court of the Territories, or a Court of Record of any of the States having common law jurisdiction and a seal and clerk."

I. Was the Municipal Court of the City of Biddeford, January 24, 1888, a "Court of Record having common law jurisdiction" within the meaning of the Act of Congress of April 14, 1802?

Section one of chapter 151 of the Public Laws of 1855, and acts amendatory thereof, establishing the Municipal Court of Biddeford as constituted January 24, 1888, provide that it "shall be a Court of Record with a seal; and said court shall consist of one judge to be appointed, qualified and hold his office

according to the constitution; and shall exercise concurrent jurisdiction with justices of the peace and quorum over all matters and things, civil and criminal, within the county of York, as are by law within the jurisdiction of justices of the peace and quorum in said county; and original jurisdiction concurrent with the Supreme Judicial Court in all civil actions in which the debt or damages shall not exceed the sum of one hundred dollars : and shall have original jurisdiction concurrent with the Supreme Judicial Court over crimes, offences and misdemeanors committed in said county which are by law punishable by fine not exceeding twenty dollars and by imprisonment in the county jail not exceeding three months."

Section four provides that "it shall be the duty of the judge of said court to make and keep the records of said court, or cause the same to be made and kept, and to perform all other duties required of similar tribunals; and copies of the records of said court, duly certified by the judge, shall be legal evidence in all courts."

Section five is as follows : "The judge shall appoint a recorder who shall be a justice of the peace and of the quorum, duly qualified, who shall be sworn by said judge and who shall keep the records of said court when requested so to do by said judge, and in case of absence from the court-room or sickness of the judge, or whenever requested by him so to do, or when the office of judge shall be vacant, the Recorder shall have and exercise all the powers of the judge and perform all the duties required in this act of the judge, and generally shall be fully empowered to sign and to issue all processes and papers and do all acts as fully and with the same effect as the judge could do were he acting in the premises; and the signature of the Recorder, as such, shall be sufficient evidence of his right to act instead of the judge without any recital of the act hereinbefore named authorizing him to act. When the office of judge is vacant the Recorder shall be entitled to the fees; in all other cases he shall be paid by the judge." Chapter 247 of the Special Laws of 1887, provides that the judge shall receive an annual salary of fourteen hundred dollars which shall be in full for all his services and the services of the recorder.

The "Court of Record" required by the federal statute is not simply a tribunal that has a recording officer and seal, and in fact keeps a permanent record of its proceedings ; for the probate court and the court of the county commissioners would fulfill all of these requirements, and yet neither of these tribunals is deemed to be technically a court of record. It must be an organized judicial tribunal having attributes and exercising functions independently of the person of the magistrate designated generally to hold it, and proceeding according to the course of the common law. It is distinguishable from the case of a justice of the peace on whom personally certain judicial powers are conferred by law. *Ex parte Gladhill*, 8 Met. 168 ; Anderson's Law Dict.

Two centuries ago, in the case of *Groenvelt* v. *Burwell*, 1 Salk. 200, Chief Justice Holt said : "Whenever a power is given to examine, hear and punish, it is a judicial power, and they in whom it is reposed act as judges ; and wherever there is jurisdiction erected with power to fine and imprison, that is a court of record, and what is there done is matter of record." Blackstone adopts this statement, adding that the proceedings of a court of record are enrolled for a perpetual memorial ; and then distinguishes a "court not of record" as one that can "hold no plea of matters cognizable by the common law unless under the value of forty shillings, nor of any forcible injury whatever." 3 Bl. Com. 24. Thus in *Woodman* v. *Somerset*, 37 Maine, 38, Chief Justice SHEPLEY says : "A court of record is one which has jurisdiction to fine or imprison, or one having jurisdiction of civil cases above forty shillings and proceeding according to the course of the common law." It was a distinguishing feature of it that at common law its judgments were reviewable only by writ of error. Accordingly in the matter of *Gladhill*, petitioner, 8 Met. *supra*, Chief Justice Shaw says of the police court of Lowell in 1844 : "We are of opinion that it is a court of record coming within the description in the Act of Congress. It possesses all the characteristics of a court of record. Section six directs the keeping of a fair record. It is not necessary to decide here whether a justice's court is a court of record. The point is left undecided in *Smith* v. *Morrison*, 22 Pick. 430.

That a writ of error will lie on a justice's judgment is well settled; and the object of a writ of error is to remove a record. It will not lie to a judgment of a probate court because not technically a court of record. Probably the result may be, from an examination of all the statutes regulating the jurisdiction of justices of the peace, that their courts will be regarded as courts of record for some purposes, but not in all respects. But we think the decision in this case does not depend upon the legal character of the courts held by justices of the peace. Many powers are vested in the police court of Lowell not conferred on justices of the peace; its constitution is different and its mode of proceeding is different. That this court exercises a common law jurisdiction there is no doubt; it is authorized to hear and determine all complaints and prosecutions in like manner as justices of the peace, and has jurisdiction of all civil suits and actions cognizable by a justice of the peace." In *ex parte, Craig, 2* Curtis C. C. 98, Judge Curtis says : 'We see no sound reason to doubt that the Police Court of Lynn was a court of record having common law jurisdiction." But it was held that the court did not have a clerk and therefore did not possess authority to naturalize. To the same effect was the decision in *State* v. *Whittemore,* 50 N. H. 245, holding that the police court of Nashua was a court of record having common law jurisdiction, but not having a clerk did not have jurisdiction over applications for naturalization. See also *Wheaton* v. *Fellows,* 23 Wend. 375 ; and *Hutkoff* v. *Demorest,* 103 N. Y. 386.

But does the Municipal Court of Biddeford have "common law jurisdiction" to the extent contemplated by the federal statute? With respect to this inquiry it is proper to remark that we have no national common law in the United States, distinct from that adopted by the several States, each for itself, except so far as the history of the English common law may be involved in the interpretation of the federal constitution. The judicial decisions, the usages and customs of the respective States determine to what extent the common law has been introduced. What is common law in one state may not be so considered in another. *Wheaton* v. *Peters,* 8 Pet. 658 ; *Smith* v. *Alabama,* 124 U. S.

478. It must also be remembered that we have no State courts in this country deriving their existence from the common law. They are all established either by the provisions of the organic law or by legislative enactment. Their jurisdiction is not uniform. Some of them have only a special jurisdiction limited as to amounts or subjects in controversy. Of this character are the Superior Courts of this State; yet it would not be questioned that they have "common law" jurisdiction. "By 'suits at common law' in the Constitution," says Judge Story in *Parsons* v. *Bedford*, 3 Pet. 443, "is meant not merely suits which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined in contradistinction to those where equitable rights alone were recognized and equitable remedies administered."

Courts of "common law jurisdiction" are such as "exercise their powers according to the course of the common law. It was not meant that they should have all common law jurisdiction over every class of subjects, including all civil and criminal matters. If so, few courts could be found in this country having the requisite common law jurisdiction." *The People, ex relatione, Brackett* v. *McGowan*, 77 Ill. 644 (20 Am. Rep. 254). So also in the matter of *Martin Conner*, 39 Cal. 98 (2 Am. Rep. 427), the court says: "The term 'common law jurisdiction' is capable of no other meaning than jurisdiction to try and decide causes which were cognizable by the courts of law under what is known as the common law of England. The act does not require that courts shall have all the common law jurisdiction which pertains to all classes of actions. It is enough if it has 'common law jurisdiction.'" Again in *U. S.* v. *Power*, 14 Blatch. 223, the court says: "The statute of the United States does not require of courts, authorized to entertain applications for naturalization, that they shall have all the jurisdiction possessed by any court of law. If the court may exercise any part of that jurisdiction, it is within the language of the statute and its meaning as well." To the same effect is *Morgan* v. *Dudley*, 18 B. Mon. (68 Am. Dec. 735). See also *The People* v. *Pease*, 30 Barb. 588; *Ex parte, Burkhart*, 16 Tex. 470, and *Mills* v. *McCabe*, 44 Ill. 194.

II.   It is admitted that the Municipal Court of Biddeford had
a seal; and assuming without deciding that it was a court of
record having common law jurisdiction within the meaning of
the act of Congress, did it also have a clerk within the meaning
of the federal statute?   The language of this statute seems to
imply that there may be courts of record having common law
jurisdiction and a seal without a clerk, and that such courts are
not embraced by the terms of the act.   And this is the con-
struction which it has received from eminent judicial authority.
The court must have a clerk distinct from the judge; not
necessarily an officer denominated clerk, but a permanent
"recording officer charged with the duty of keeping a true record
of its doings and afterwards of authenticating them." Shaw,
C. J., in *ex parte, Gladhill*; *Ex parte, Craig*, and *State* v.
*Whittemore, supra*.   The court contemplated by the act of
Congress has an organized existence.   It is impersonal.   The
judge is one of the constituent parts of the organization; the
clerk is another and a separate and an independent element.
The essential function of the clerk is to make and keep the
records and give them legal verification by his attestation and
the use of the seal.

By those sections of the act establishing the Municipal Court
of Biddeford above quoted, the responsible duty of making and
keeping the records of the court is imposed upon the judge and
not upon the recorder.   There is no duty of making and keeping
the records imposed upon the recorder by law.   He is to keep
the records of the court only when requested so to do by the
judge.   Furthermore, the recorder of this court cannot authen-
ticate by his attestation any copies of records "made and kept"
by the judge or kept by himself at the request of the judge.
Only such copies of the records as are "duly certified by the
judge shall be legal evidence in all courts."   The authority to
appoint a recorder was conferred upon the judge, not for the
purpose of creating a fixed and permanent clerical office distinct
and separate from that of the judge, but primarily to provide
for the judge a substitute who should be empowered to act in

his stead in the contingencies named in the act. "His signature as recorder is sufficient evidence of his right to act instead of the judge." When thus acting in a judicial capacity, exercising the powers and performing the duties of the judge, the recorder is the court and must personally make, keep and authenticate the records of the court. The recorder's court has no clerk other than the recorder himself. Accordingly in the attestation of the copy of William Dean's declaration of intention, the signature of "Edwin J. Cram, Recorder," by the very terms of the act, is presumptive evidence that he was acting instead of the judge in some of the contingencies named in the act.

The process of naturalization, in the mode it is required to be performed by the federal statutes, is a judicial act. *Spratt*, v. *Spratt*, 4 Pet. 393. And "the importance and value of this privilege of citizenship, which is conclusively and finally bestowed by the act of the court having jurisdiction, should prevent us from allowing less than its full weight to any requirement by Congress which tends to restrict this power to those tribunals which may be supposed most competent to exercise it. Certainly, there would seem to be no propriety in intrusting to a court which in the exercise of its common law jurisdiction cannot pass finally on any matter of law or fact affecting property to the amount of one dollar, to make a final decision upon all questions of law or fact involved in an application for this great right, so as to make an absolute and unimpeachable grant of it." Curtis, J., in *ex parte*, *Craig*, above cited.

We are accordingly of opinion that the Municipal Court of the City of Biddeford, January 24, 1888, did not have have a clerk within the intent and meaning of the federal statute, and therefore had no jurisdiction over applications for naturalization and no authority to receive and record the declaration of intention made by William Dean. The application for admission to citizenship was properly dismissed.

*Exceptions overruled.*

PETERS, C. J., WALTON and VIRGIN, concurred. LIBBEY and HASKELL, JJ., concurred in the result.