Re Bonnet y Jaspard.

# IN RE THE NATURALIZATION OF LOUIS A. BONNET Y JASPARD.

1. The district court of the United States for the district of Porto Rico has jurisdiction to naturalize aliens, by virtue of its general jurisdiction as a district court with circuit court powers conferred upon it by the Congress of the United States.

2. A declaration of intention to become a citizen of the United States, sworn to before a judge of a municipal court of Porto Rico during the period of the military government of Porto Rico, constitutes a sufficient declaration of intention to become a citizen of the United States to give to this court jurisdiction, upon proper proofs being presented and after the lapse of time required by law, to issue final naturalization papers to such applicant.

3. The municipal courts of Porto Rico during the time of the military government of Porto Rico were courts of record within the provisions of § 2165 of the Revised Statutes of the United States, and as such had jurisdiction to accept the affidavit and oath of the intention of an alien to become a citizen of the United States, and thus to initiate the proceeding by which such alien might eventually receive final naturalization papers from a court having the proper jurisdiction to issue the same.

4. The declaration of an intention to become a citizen of the United States, which is provided for by § 2165 of the Revised Statutes of the United States (U. S. Comp. Stat. 1901, p. 1329), is not considered by Congress or the courts of the United States of such a technical character as to require the strict compliance which is always required in the application for the final naturalization papers which may be issued in such cases; and a substantial compliance with the law as to such preliminary declaration, although subject to technical objection, is often considered a sufficient compliance, inasmuch as the competent court, upon the application for final admission papers, will carefully consider all questions of informality or technical error in passing upon such final application.

5. Where a subject of the Republic of France residing in Porto Rico took an oath of allegiance and subscribed to a declaration of intention to

Re Bonnet y Jaspard.

become a citizen of the United States, in the form prescribed by the Revised Statutes of the United States, before the judge of a municipal court of Porto Rico under the military government of the United States in that island, on October 23, 1899, there is a sufficient compliance with the law to authorize this court, after the expiration of the time prescribed by the Revised Statutes, to entertain an application for the issuance of the final naturalization papers of such applicant.

Opinion filed August 18, 1906.

*Messrs. Hartzell & Rodriguez,* attorneys for applicant.

*N. B. K. Pettingill, Esq.,* District Attorney, as *amicus curiæ.*

RODEY, Judge, delivered the following opinion:

This matter is before the court because of the following facts and occurrences:

On July the 26th, 1906, during the present term of this court, the above-named person presented himself in open court, accompanied by Charles Hartzell, Esq., an attorney of this court, as his advocate, and also accompanied by two witnesses, citizens of the United States, and made application to be naturalized; which application, after investigation and taking proof by the court, and after argument by his said counsel, was granted, he taking the oath of allegiance, and a judgment being duly entered admitting him to citizenship. Five days thereafter, on the 31st of the same month, the United States attorney for this district, N. B. K. Pettingill, Esq., filed a petition asking that the applicant be cited to show cause why the judgment of the court admitting him to citizenship should not be set aside as having been inadvertently entered under a misapprehension of fact, and his certificate be recalled and canceled.

The court thereupon sent for Mr. Hartzell, and the matter of this application for a rule to show cause was argued at length by both sides. The point made in the petition of the district attorney is that the said applicant had at no time before making his said final application made a declaration of his intention to become a citizen of the United States before any court competent to take such declaration. The several hearings had on this matter developed the following state of facts:

That the applicant is thirty-nine years of age. That he is a man fairly well educated, speaking English, French, and Spanish. That he was born in the island of Vieques (a part of Porto Rico), of French parents, who had shortly before removed thereto, and who preserved their French citizenship. That, save for temporary absences, he has always lived on said island. That it was his intention at the time of the American occupation to become a citizen of the United States, and that he believed he had so become a citizen. That in about 1898–99, under the military government established by the Army in Porto Rico, he was for a while American consular agent and secretary of the municipality, as well as a member of the municipal council, at said Vieques, and, later, alcalde or justice of the peace, and took all the oaths of allegiance to the United States and oaths of office considered necessary in the premises. That after the establishment of civil government over Porto Rico, in 1900, he was elected by the votes of the people of his district as alcalde, and took the prescribed oath to support the Constitution and laws of the United States and of Porto Rico, to qualify himself for the discharge of his duties, which he duly entered upon and held for a considerable time. That, in fact, he then and ever since believed himself to be an American citizen until recent political strife in his section caused the institution of quo warranto proceedings against him to oust him from the office of alcalde which he held, and which latter fact caused him to take

advice, resulting in this application to be naturalized. That the district court of the island, sitting at Humacao, recently, in said quo warranto proceedings, held that, at the time he lastly took said office, he was not a citzen of Porto Rico or of the United States.

The declaration of intention which was presented by the aplicant, and to the sufficiency of which the United States attorney objects as aforesaid, was made by him before a municipal judge of Porto Rico under the United States military government, on October 23, 1899, some six months after the date of the treaty of Paris, and about the same length of time before the establishing of civil government in Porto Rico.

The declaration is on a printed Spanish form, and a translation of it is as follows:

Oath of Allegiance to the United States of America.

I, Louis Amadé Bonnet y Jaspard, native of Vieques, province of Porto Rico, born the 7th of March, 1867, by these presents declare and solemnly swear that I have lived in Porto Rico during the past five years, and during the past six months in the municipality of Vieques, and that it is my true and lawful intention to become a citizen of the United States of America, and by these presents I renounce forever all obedience and fidelity to every foreign prince, potentate, state, and sovereignty whatsoever, and in particular to the Republic of France, of which I was a subject. So help me God.

Sworn to and subscribed before me this 23d of October, 1899.
(Sig.) Louis Amadé Bonnet.　　　　　　　　G. Brignoni.
　　　　　　　　　　　　　　　　　　Municipal Judge.
(Seal of the municipal court.)

The United States attorney does not dispute that this court, under its jurisdiction as a circuit and district court of the Unit-

ed States, is vested with power, which, it is admitted, previous judges have several times exercised, to naturalize aliens (not Porto Ricans, as they owe permanent allegiance to the United States), if such aliens meet the requirements; nor does he deny that residence in Porto Rico since the date of the treaty can be counted as residence in the United States or its territories, such as is required by subs. 3 of § 2165 of the Revised Statutes (U. S. Comp. Stat. 1901, p. 1329). In fact, that such residence can be so counted is made manifest by § 30 of the new naturalization law, approved June 29th last, which is to be in effect October 1st, which, omitting other portions, reads: "And residence within the jurisdiction of the United States, owing such permanent allegiance, shall lbe regarded as residence within the United States within the meaning of the five years' residence clause of the existing law."

Section 2165 of the Revised Statutes provides that an applicant for naturalization "shall declare on oath before a circuit or district court of the United States, or a district or supreme court of the territories, or a court of record of any of the states having common-law jurisdiction and a seal and clerk, two years at least prior to his admission, that it is bona fide his intention to become a citizen of the United States, and to renounce forever all allegiance and fidelity to any foreign prince, potentate, state, or sovereignty, and particularly by name, to the prince, potentate, state, or sovereignty of which the alien may be at the time a citizen or subject."

Was the municipal court at the time of the military government of Porto Rico such a court as is contemplated by the foregoing section of the law? And, if it was not, was it such a court as could receive such a declaratory statement, under the peculiar circumstances and conditions then existing here under the war power? It has been treated as a court of record within

Re Bonnet y Jaspard.

the meaning of art. 9 of the treaty of Paris, before which Spanish subjects, natives of the Peninsula, could, within the term of one year after the date of the treaty, preserve their allegiance to the Crown of Spain by making a declaration to that effect, because it is in evidence that more than six thousand such declarations were made before it, and are considered sufficient by, and are on file with, the proper authorities who have the custody of them. It was shown in evidence that it had a clerk, a marshal, and a seal, and kept full records of its proceedings; that it had jurisdiction up to $400, and that its jurisdiction up to that limit was common-law jurisdiction *pro tanto*. If it is a court of sufficient dignity to enable Spanish subjects, natives of the Peninsula, to retain their allegiance to the Spanish Crown, under a solemn treaty, by taking and recording their declarations in that behalf, surely it ought to be considered as a court before which a declaration of intention to become a citizen of the United States could be made. It may, of course, be doubted whether there was any court in Porto Rico during the military government, that could take such a declaration, or even that the naturalization laws were at that time in force in the island at all.

The United States attorney admitted during the hearing that the court known as the provisional court, established under a general order during such occupation,—and, by the way, of which he was the learned Judge,—did receive such declarations, and that previous judges of this court had held them to be sufficient, under § 2165 of the Revised Statutes. If this holding was right, we can see no reason why the municipal court could not have, with equal authority, taken such declarations. It has been held that if a court exercise any part of common-law jurisdiction, it is sufficient for this purpose. United States v. Power, 14 Blatchf. 223, Fed. Cas. No. 16,080; Re

Conner, 39 Cal. 98, 2 Am. Rep. 427; Re Dean, 83 Me. 493, 13 L.R.A. 229, 22 Atl. 385; People ex rel. Brackett v. McGowan, 77 Ill. 644, 20 Am. Rep. 254; United States v. Lehman, 39 Fed. 49.

In the treaty of Paris, in the 2d clause of art. 9, it was provided that "the civil rights and political status of the native inhabitants of the territories hereby ceded to the United States shall be determined by the Congress." [30 Stat. at L. 1759.] This might be broad enough to include the applicant under the term "native inhabitants," and thus put him in the list with Porto Ricans, who cannot be naturalized in Porto Rico under existing law, although it is doubtful if that was the intention, as he was then a subject of France. But even if that clause was intended to embrace such as he, Congress failed thereafter in the organic act to provide for persons in his condition, and left an apparent hiatus in the law. Section 7 of the act of April 12, 1900, commonly known as the Foraker act, providing a civil government for Porto Rico, when declaring who should be considered Porto Ricans, limited the people who could be thus classed to all inhabitants continuing to reside therein and who were Spanish subjects at the date of the treaty, and have not preserved their allegiance to Spain in the manner provided. This, of course, excludes a man like the applicant, who is perhaps a native inhabitant, though French, and leaves him in an anomalous position for at least two years, if his present certificate of naturalization should be set aside.

Whatever may be the intention of Congress with reference to the future status of Porto Ricans, there is nothing in the law that shows any intention not to accord all foreigners in Porto Rico the same privileges that are accorded to citizens of their nations in the United States proper; and the natural inference is that foreigners in Porto Rico have the right to become citi-

zens of the United States if they meet the requirements. The policy of this country has heretofore ever been that of extending the blessings of our liberties to citizens of all civilized nations that come among us. Contrary to what many courts in some measure appear to have considered, the making of a preliminary declaratory statement of an intention to become a citizen of the United States has never been considered, by Congress at least, of prime importance, and wherever a substantial compliance with law has existed in that regard, and only technical failures or omissions occur, and complete qualification of the applicant was shown on his final admission by a competent court, Congress has corrected in every instance, by special act, all previous informalities.

Judge Campbell, of the supreme court of Michigan, in the case of Andres v. Arnold (1889) 77 Mich. 85, 6 L.R.A. 238, 43 N. W. 857, made a commendable research into history on this subject, and shows plainly that "the history and construction of the naturalization laws show that this declaration confers no privileges, and fixes no rights, and is not jurisdictional." This statement of the learned judge is perhaps not strictly the fact in public-land states, and territories, but it is certainly the fact as to foreigners in Porto Rico. It has been repeatedly held that no inquiry can be made to attack the sufficiency of final admission to citizenship, as to a want of conformity to previous requirements of the statutes. Campbell v. Gordon, 6 Cranch, 176, 3 L. ed. 190; Stark v. Chesapeake Ins. Co. 7 Cranch, 420, 3 L. ed. 391; Spratt v. Spratt, 4 Pet. 393, 7 L. ed. 897. The naturalization laws originally required no preliminary declaration at all. Two years residence was sufficient. 1 Stat. at L. 103, chap. 3. Judge Campbell further points out that in 1795 the rule requiring a declaration of intention to become a citizen was first adopted, and was then fixed at three

years, instead of two, as now required. 1 Stat. at L. 414, chap. 20. At all times in our history this declaration of intention to become a citizen has been merely the *ex parte* oath of the applicant, and no formal inquiry was ever made judicially until the applicant applied for his final papers, when all necessary facts were looked into. In 1798 some very stringent laws were passed, requiring a declaration of five years before admission, and fourteen years residence in the country, with a few exceptions, but in 1802 the old rule was restored. 2 Stat. at L. 153, chap. 28. In 1804 declarations of intention were dispensed with in cases where residence dated back of the law of 1802. In 1824 a most liberal law was enacted, and the time for declaring intention was fixed at two years before final admission. At this time our law, dispensing with the declaration of intention by minors who lived for three years of their minority in the country, and permitting them to make the declaration and take the final oath at once after five years residence, was enacted. The law corrected all informalities in previous declarations of intention, and went to the extent of holding that final admissions that had been permitted by the courts where no previous declaration of intention had been made at all were validated. 4 Stat. at L. 69, chap. 186 (U. S. Comp. Stat. 1901, p. 1332). About that time a law was passed exempting persons who came to the country between 1802 and 1812 from making a declaration of intention. 4 Stat. at L. 310, chap. 116. In 1848 the old law, requiring continuous residence in the country, was repealed. 9 Stat. at L. 240, chap. 72. The revision of the laws of 1872, which is well known to have been a bungling piece of work, omitted the validating statute of 1824, but that act was included in the reprint of 1876. Judge Campbell, with apparent reason, says it is difficult to see for what purpose laws requiring this preliminary declaration were enacted, unless as a reminder to the applicant that he ought not to become a citi-

Re Bonnet y Jaspard.

zen without two years' deliberation. This preliminary declaration is dispensed with, as is well known, in many cases. Soldiers honorably discharged do not have to make it. Informalities in and about naturalizations, whenever brought to the attention of Congress, or when questioned in the courts, have been treated liberally in favor of the applicant. As late as June, 1906, Congress passed an act to cure mistakes or informalities that had been made in certificates of naturalization after the passage of the act of 1903, and also cured all declarations of intention and certificates of naturalization issued by the criminal court of Cook county, Illnois, which, it transpired, had acted in numerous cases without jurisdiction. The Congressional Record shows very many cases relating to members of both Houses of Congress, where very liberal views were taken regarding the citizenship of persons claiming seats therein. In a recent very celebrated case, that of Boyd v. Nebraska, relating to the governorship of the state of Nebraska (143 U. S. 135, 36 L. ed. 103, 12 Sup. Ct. Rep. 375), the court indulges in a most exhaustive and learned review of the naturalization laws, and it is demonstrated that mere informalities in preliminaries to naturalization are not looked upon with favor, but that where good faith in the applicant is shown, and he is otherwise qualified, the laws are liberally construed in his favor.

In this case the applicant has certainly shown the best of intentions. He has several times during about eight years last past taken a solemn oath to support the Constitution and laws of the United States; he has, in fact, administered to some extent those laws for seven years. He took the exact oath required by law as a declaration of intention, in form at least, before a court of record and, to some extent, exercising common-law jurisdiction. He has held office under the flag of the United States; he has been proved to be a man of good moral charac-

Re Bonnet y Jaspard.

ter, and well disposed toward American institutions, and not to
be in any manner in sympathy with the doctrines of anarchists
or those who oppose all organized government, and as to personal
qualifications has been shown to be fairly well educated in three
languages.  In the hearing that took place before the court on
his final admission, he proved conclusively all of the above facts,
and, further, that it has been bona fide his intention ever since
the American occupation of this island, some eight years ago,
to become a citizen of the United States, and that he in fact be-
lieved he was such citizen, and apparently appreciated it and
was proud of it.  Further, it is manifest that, having lived in
the place where he now resides, since he was born, if such resi-
dence could count for him, after the change of sovereignty, al-
though being foreign soil during his minority, he could be held,
under § 2167 of the Revised Statutes, to have spent more than
three years of his minority in the country, and thus have ob-
tained the right to make his declaration of intention, and be
finally admitted on the day the certificate was issued to him.

The judgments of courts, such as this is, are in a measure
sacred and solemn legal proceedings, not to be lightly cast aside;
and therefore realizing, as the court does, that no injury has
occurred, and that the applicant has substantially and in good
faith complied with every requirement of law, all doubts should
be resolved in his favor.  If the judgment is set aside, it can
have no effect other than to make the applicant wait two years,
and put him to a lot of trouble under the new naturalization
law approved June 29 last, which will be in force ninety days
after its approval, and with every requirement of which, in
substance at least, he has already and in good faith complied.

Therefore, there appearing to be no substantial merit in the
objection that is made to his naturalization, and that it comes
rather late, being after the judgment has been duly entered,

the petition for a rule to show cause will be denied, and the judgment of the court admitting him to citizenship, heretofore entered, permitted to stand.