Henry Mills *et al.*

*v.*

James McCabe.

1. Statutes — *concerning the act of congress relative to naturalization.* Under the act of congress of 1802, conferring jurisdiction upon certain courts for the purposes of naturalization, only courts of record for general, and not for special, purposes, were intended to be embraced within its provisions.

2. Electors — *only qualified electors have a right of action for a rejection of their votes.* By the act of 1849, the right of action is given only when the vote of a qualified elector has been rejected.

3. Same — *who will not be deemed a qualified elector.* "The Marine Court of the city of New York" is not a court of record within the meaning of the act of congress conferring jurisdiction upon courts of record to admit aliens to citizenship ; and hence a person so admitted by an order of that court does not become a qualified elector, and cannot maintain an action, under the act of 1849, for a rejection of his vote.

Writ of Error to the Circuit Court of La Salle county ; the Hon. Madison E. Hollister, Judge, presiding.

The opinion states the case.

Mr. GEORGE C. CAMPBELL, for the plaintiffs in error.

Mr. OLIVER C. GRAY, for the defendant in error.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was an action on the case brought by James McCabe, in the La Salle Circuit Court, against Henry Mills, Thomas Phillson, and Darius Fyffe, to recover damages for refusing his vote at a general election. Plaintiffs in error were judges of the election in the precinct where the vote was offered. It appears that defendant was a native of Ireland, but emigrated to this country, and claims to have been naturalized according to the laws of congress, previous to his offering to vote. Plaintiffs in error insist that he was not legally naturalized, inasmuch as the court before which his declaration of intention was made, and which administered the oath of allegiance, did not have jurisdiction for the purpose.

The only question which we propose to consider, is, whether that court was invested with legal authority to naturalize aliens under the acts of congress; if it had not, that ends the case. If it had, then the proceedings are sufficiently regular in other respects, to sustain the action and judgment of the court below.

The order admitting defendant in error to citizenship, was made and certified by the "Marine Court of the city of New York," which was created by the act of the general assembly of the State of New York. Congress has conferred a jurisdiction upon various courts, as well State as federal, for the purpose.

The act of 1802 provides that an alien may be admitted to citizenship by any one of the following named courts, upon proper case made. " The Supreme, Superior, District or Circuit Court, of some one of the States, or of the territorial districts of the United States, or a Circuit or District Court of the United States," and section three declares, " whereas

doubts have arisen whether certain courts of record in some of the States are included within the description of District or Circuit Courts, be it further enacted, that every court of record in any individual State, having common law jurisdiction, and a seal and clerk, or prothonotary, shall be considered as a District Court, within the meaning of this act."

These provisions seem to be clear and unambiguous, and the only question is, whether the "Marine Court" was embraced within the scope of their operation. That court had a clerk and a seal, and it had common law jurisdiction to the extent of $500, and whether it comes within the other requirements of being a court of record, depends upon the law by which it was created, and subsequent enactments which conferred and extended its jurisdiction.

In ascertaining the limits of its jurisdiction, we must be governed by the construction given to the act by the courts of New York. In the case of *Carter* v. *Dallimore*, 2 Sandf. 222, it was held, that while it was a court of record for some purposes, it was not authorized to give judgment on default without full proof of plaintiff's demand, in the manner required of justices of the peace. In the case of *Hughes* v. *Mulvey*, 1 Sandf. 95, the assistant justice's court, and the Marine Court, are referred to as courts of inferior jurisdiction, and not courts of record. In *Rice* v. *Platt*, 3 Denio, 81, the court held, that the Marine Court had no jurisdiction in a case of illegal arrest. In the case of *Cain* v. *Daley*, 3 E. D. Smith, 128, that court is classed with a justice of peace court. In *Feganiers* v. *Jackson*, 4 E. D. Smith, 483, the court says, the proceedings in the Marine Court on a trial are informal; the pleadings are oral; they have, in technical strictness, no judgment roll. Their judgment record is a justice's docket. There is, then, no bill of exceptions. And it was also held in another case, that the court, as to attachment suits, must be governed by the act prescribing proceedings in such cases before justices of the peace. The question, however, seems to have been settled by the Court of Appeals in New York, in the case of *Huff* v. *Knapp*, 1 Selden, 65, where it was held, that this Marine Court was not

a court of record, in the strict legal sense of the term. The court says, that it may be called a statutory court of record, having certain powers of such a court expressly given it by statute, and none others; and hence it had none of the incidental powers of a court of record. Having been decided by competent authority to be a court of record only to the extent that it was so declared by statute, and not to possess other powers incident to such a court, we are not authorized to hold it a court of record. A fair and reasonable construction of the act of congress requires us to hold that only a court of record for general, and not special, purposes, was intended to be embraced. The act has not declared, that a court of record, for some purposes only, shall be invested with such jurisdiction. Nor do we think such can be held to be the legislative intention.

The provision of the act of 1849, under which this proceeding is instituted, is contained in the 20th section. Sess. Laws, 75. It is this: "If any judge or judges of any election shall refuse to receive the vote of any qualified elector who shall take, or offer to take, the oath prescribed by this act, in such case every judge so refusing or neglecting to receive the vote or ballot, or opening or unfolding such ballot when the same shall be presented, shall be liable to be indicted, and on conviction shall be fined $500, and imprisoned not exceeding thirty days; and for every refusal or neglect to receive such vote, the party aggrieved may have an action on the case against the said judge or judges; the damages in such case shall not exceed the sum of $500."

. It will be observed, that the right of action is given only when the vote of a qualified elector is rejected. When such an elector offers to take the oath, and they reject his vote, they can, under this provision, only become liable in case he was a qualified elector. This section has only authorized such elector to maintain an action.

As we have seen, defendant in error, although he had gone through the forms of admission to citizenship, did not become naturalized, and consequently was not a qualified elector. He,

therefore, was not entitled to vote, and no wrong was done him when his ballot was refused.

We deem it unnecessary to discuss the question in this case, whether the judges may reject the vote of a qualified elector, who has offered to take the oath, although there may be evidence to rebut the evidence of his right to vote. That question does not necessarily arise in this case.

The judgment of the court below must be reversed and the cause remanded.

*Judgment reversed.*