C. Francis Stradford, Appellee, v. Mabel G. Reinecke et al., Individually and as Members of Board of Election Commissioners of City of Chicago, Appellants.

Gen. No. 46,453.

First District, Second Division.
June 28, 1955.
Rehearing denied July 19, 1955.

Released for publication September 13, 1955.

Jacob Shamberg, of Chicago, for appellants.

Sidney A. Jones, Jr., and Edward B. Toles, both of Chicago, for appellee.

MR. JUSTICE ROBSON delivered the opinion of the court.

Plaintiff, a defeated Republican candidate for the office of state representative in the general election held November 2, 1948, brought an action to recover damages against defendants Mabel G. Reinecke, Harry A. Lipsky and William B. Daly, individually, and as members of the Board of Election Commissioners of the City of Chicago, complaining of their conduct in failing to preserve and in destroying certain ballots cast in that election by the city electors.

Trial was before a jury. A verdict was returned for $7,500 on which the court entered judgment. Defendants made the usual post-trial motions which were overruled.

Defendants on this appeal make numerous contentions, but we deem it necessary to consider only the following: (1) that an election contest is given by Article 23, Section 12 of the Election Code (Ill. Rev. Stat. 1947, ch. 46, par. 23—12 [Jones Ill. Stats. Ann. 43.1007]) only to a qualified voter and not to an unsuccessful candidate as such and, therefore, assuming defendants' duty to preserve the ballots, their duty ran solely to the public, generally, and not individually to

plaintiff as a candidate; (2) that the Code does not provide for civil liability and, therefore, it denies such liability; and (3) that, assuming their duty and their failure to preserve the ballots, they are not liable to plaintiff because they had no actual notice of the pendency of his contest.

The pertinent facts pertaining to these contentions are that plaintiff was one of four candidates for the office of state representative from the Fifth Senatorial District in the November 1948 general election. Three were to be elected. Of the four, two, Louis G. Berman and Charles M. Skyles, were the Democratic candidates. Noble W. Lee and plaintiff were the Republican candidates. Cumulative-voting procedure governed the manner of their election.

Defendants, as members of the Board of Election Commissioners, together with the county judge and the city attorney, were members of the city canvassing board whose duty it was to open and canvass the election returns certified by the precinct clerks and judges of election. On November 14, 1948, the canvassing board was completing its canvass of the precinct election returns for the office of state representative from the Fifth Senatorial District. Stradford, the plaintiff, was present, as were several of his watchers who supported his candidacy. While the canvass was proceeding, they called attention to large discrepancies between the tallies and the totals of the votes credited to Stradford appearing in a significant number of the returns. To take but one of several examples, the tallies recorded by the clerks and judges of election in the 1½ and the 3-vote columns of one precinct return gave plaintiff, respectively, 135 and 60 votes, which entitled him to 382½ votes; however, the total recorded vote for plaintiff in that return gave him only 78½ votes. Plaintiff's claimed loss, based on the discrepancies between tallies and totals appearing in the returns of the 55 precincts concerning which there was testimony

540

totaled more than 11,000 votes. The final results of the election for state representative from the Fifth Senatorial District, as proclaimed by the governor on the following day, November 15, 1948, gave Berman, 118,890; Skyles, 114,239; Lee, 69,716; and Stradford, 66,716. Berman, Skyles and Lee were proclaimed elected.

On the previous day, November 14, when the canvassing board was completing the canvass, defendants' reporter officially noted plaintiff's objections. Plaintiff and one of his watchers continued to complain of the discrepancies in the precinct returns to William Daly, one of the defendants, and to request that the canvassing board in making its abstract of the returns revise and conform the totals to the tallies or otherwise correct the errors. Daly informed them that the canvassing board had no authority to make such changes and could only abstract the total votes as they appeared in the returns; that they were "slowing up the canvass," "disturbing the count"; that he "knew" that plaintiff was going to contest the results of the canvass; that therefore there was no need to further slow the canvass; that the board would understand that he was objecting to the entire canvass. Stradford and his watchers then desisted from making further formal objections to defendants' reporter. That same day the canvassing board completed its canvass, transmitted the results to the county clerk of Cook county and adjourned as a canvassing board.

On December 3, 1948, within thirty days from the date that the results of the election had been determined, plaintiff served notice of his intention to contest the election on Berman, Skyles and Lee, and also delivered a copy of his petition to contest the election to the Secretary of State, as required under Article 23, Section 13 of the Election Code (Ill. Rev. Stat. 1947, ch. 46, par. 23—13 [Jones Ill. Stats. Ann. 43.1008]). On December 14, 1948, the Secretary of State acknowl-

541

edged receipt of plaintiff's petition and thereafter transmitted it to the Speaker of the House of Representatives. The matter was referred to the House Committee on Elections which thereafter referred it to a subcommittee. On May 27, 1949, the subcommittee met, considered the matter and, after dismissing the contest as to Berman and Skyles, directed the Board of Election Commissioners to count the ballots of election in its custody and determine the votes received by Lee and Stradford. The first notice the board had of the contest was when the order was served on it on May 31, 1949.

On March 4, 1949, the Board of Election Commissioners adopted a resolution, the pertinent parts of which are:

"Whereas, a General Election . . . was conducted . . . on November 2, 1948, and

"Whereas, the ballots . . . used in . . . said . . . election are retained in sealed vaults under the supervision of the Chief Clerk of the Board; and

"Whereas, the statutory period for which the Chief Clerk . . . must retain the . . . ballots . . . viz: Two months after the day of election has expired; and

"Whereas, the Board . . . have received no official notice of contests pending involving . . . said . . . election; and

"Whereas, . . . further retention of the . . . ballots . . . will cause a large and unwarranted expense;

"It is, Therefore, Resolved, that the Chief Clerk . . . dispose of, in the manner provided by law, all ballots . . . used . . . at the . . . election; . . . "

The essential parts of the provision of the Election Code (Ill. Rev. Stat. 1947, ch. 46, par. 17—20 [Jones Ill. Stats. Ann. 43.884]), governing the action of the Board of Election Commissioners, reads as follows:

". . . who [i.e., the Board of Election Commissioners] shall carefully preserve said ballots for two (2) months, and at the expiration of that time . ./. shall remove the same from original package and grind and shall sell the same . . . Provided, if any contest of election shall be pending at such time in which such ballots may be required as evidence, the same shall not be disposed of or sold until after such contest is finally determined."

In two counts, plaintiff's amended complaint charged, first, the defendants acted contrary to their statutory duty in failing to preserve and in destroying the ballots; second, that defendants destroyed the ballots "wilfully, fraudulently and maliciously and with intent to prevent plaintiff from pursuing his contest and . . . from obtaining the office to which he was rightfully entitled. . . ."

■ We will dispose of defendants' first contention that any duty under which they might have been to preserve the ballots they owed solely to the public, generally, and not privately to the plaintiff. They cite in support thereof Article 23, Section 12 of the Code (Ill. Rev. Stat. 1947, ch. 46, par. 23—12) and the case of McKinley v. McIntyre, 360 Ill. 382. Paragraph 23—12 of the Code states that the election of any member to the General Assembly may be contested by any "qualified voter of the district to be represented by such senator or representative." The court in the McKinley case pointed out that the contest instituted under that section by a candidate defeated on the face of the returns was in his own name and in his capacity as an elector. The court, however, did not deny but acquiesced in the contention, citing the case of Olson v. Scully, 296 Ill. 418, that the candidate has an interest in the contest directly and distinctly different from that of the public generally. The court in the McKinley case, supra, simply stated that both interests exist by virtue of statute. The problem in the McKinley

543

case was to extend the candidate's interest to the general electorate as a body and uphold the legislature's power to prohibit the abatement of an election contest upon the death of any contestee and to allow any elector of the political subdivision to appear and intervene in such proceeding, voluntarily or under order of court, in the place of the deceased candidate-contestee. We hold that defendants' duty to preserve the ballots ran individually to the plaintiff, as a defeated candidate, as well as to the public generally, and that the interest of the plaintiff, as a candidate, was special and distinct from that of the public generally.

The broad purpose of Article 17, Section 20 of the Code (Ill. Rev. Stat. 1947, ch. 46, par. 17—20), as originally enacted, Laws 1861, p. 269, sec. 27, was given in its preamble to safeguard to the people of this State their rights of suffrage, to prevent illegal voting and to insure their elective will. The ballots were to be preserved for a specified period following an election and their integrity carefully and dutifully preserved to be used as evidence to effect that purpose. People v. Lueders, 269 Ill. 205, 206. But as evidence their integrity was to be dutifully preserved not merely to effectuate the will of the people, but in addition to furnish a new ground of contest to a defeated candidate. See, e. g., Ex parte Brown, 97 Cal. 83, 31 Pac. 840, 842; O'Gorman v. Richter, 31 Minn. 25, 28; Lammot v. Brewer (Del. Ct. Ch.), 97 A.2d 547; and cf. Dines v. People, 39 Ill. App. 565, 568. Defendants' duty to preserve the ballots ran also to the plaintiff individually, and a breach of that duty resulting in injury to plaintiff obviously was specially and distinctly greater than the injury suffered by the public, generally, each of whom would suffer no more nor less than the rest. To the same effect is Gage v. Springer, 211 Ill. 200.

■ Defendants next contend that they are under no civil liability to plaintiff because the statute makes no provision therefor; that if they have breached their

544

duty to preserve the ballots, some form of public prosecution is the appropriate remedy. For more than two centuries courts in countries with a representative form of government have given the highest possible degree of protection to a citizen's right to vote (Herring v. Finch, 2 Lev. 250 [1679], 83 Eng. Rep. 542), and, correlatively, to his rights as a candidate for public office (Sterling v. Turner, 1 Vent. 206 [1672], 86 Eng. Rep. 139). As early as 1849 by statute in this State a civil remedy for damages was provided to an elector deprived of his right to vote by the neglect or refusal of an election official. (Mills v. McCabe, 44 Ill. 194, 197.) Civil liability attached, however, in the absence of any statute where an election official wilfully deprived an elector of his right to vote. (Bernier v. Russell, 89 Ill. 60.) For cases in other jurisdictions see, generally, 153 A. L. R. 109 et seq. A civil action for damages has similarly been accorded under our law to a candidate wilfully injured in his candidacy by an election official. (Hill v. Carr, 186 Ill. App. 515.) See also Judd v. Polk, 267 Ky. 408, 102 S.W.2d 325; Larson v. Marsh, 144 Neb. 644, 14 N.W.2d 189; Frank v. Eaton, 225 App. Div. 149, 231 N. Y. Supp. 477; Schwartz v. Heffernan, 304 N. Y. 474, 109 N.E.2d 68; and cf. Moore v. Kessler, 59 Ind. 152; Dines v. People, 39 Ill. App. 565, 568. See also Restatement, Torts, sec. 865; also, generally, 153 A. L. R. 147 et seq. To the same effect are Strickfaden v. Zipprick, 49 Ill. 286; People for Use of Munson v. Bartels, 138 Ill. 322; Gage v. Springer, supra; and cf. People v. May, 251 Ill. 54.

As to defendants' contention that they are not liable to plaintiff because he failed to give them notice of the pendency of his election contest before the House of Representatives of the state legislature, plaintiff asserts that it was the duty of defendants to make a search to ascertain if any contests for the various offices to which candidates were to be elected had been filed. The record reveals that it was the custom and

545

procedure of the party filing an election contest to notify defendants when it was necessary for them to retain the ballots. If they were notified, in every instance the ballots were preserved until the contest was concluded. Cook county, the City of Chicago, and certain small areas outside the city, are under the jurisdiction of the defendants as election commissioners; the balance of the area outside the city is under the jurisdiction of the county clerk.

 This court will take judicial notice of the fact that in the November 1948 general election, in which plaintiff was a candidate, approximately twenty-six elective offices were to be filled by the voters. The ballot contained the names of candidates for president, vice president, governor, various other state offices, county officials, state senators and representatives. In addition, there was a separate ballot for municipal court judges. Under the jurisdiction of the election commissioners are nineteen senatorial districts, or parts thereof. The record reveals that there were in excess of 100 candidates for the various offices to be filled at the election in question.

 A contest filed with reference to state officials is heard by the legislature in joint session; if a state senator is involved, the state senate; if a state representative, the House of Representatives; and if county officials, the circuit or superior court. For example, in case of a contest of the office of President of the County Board of Cook county, any one of the approximately 3,000,000 voters in the county could file the proceedings in the circuit or superior court. A contest of the election of a justice of the Supreme Court could be filed in the clerk's office of the circuit court of any of the counties in the Supreme Court district. It was stipulated at the trial that no written notice of plaintiff's contest was given to defendants. There is no claim nor a showing in the record that the acts of the defendants in destroying the ballots were wilfully

546

and wantonly committed for the purpose of depriving the plaintiff of his office. There was testimony that during the canvass Stradford complained to defendant Daly about the erroneous returns and Daly informed him that he had no right to change the totals. Stradford threatened to contest the election. It is common knowledge that in many instances in an election when the margin between the defeated and elected candidates for the various offices on the ballot is very close that many of those who are defeated interpose and claim irregularities sufficient to cause their defeat and as a result threaten or say there will be a contest as to the particular office. Should this be construed to constitute notice that a contest of the election would be filed? This construction would require that in each election, the election commissioners and county clerks of the State search and ascertain whether a contest had been filed for each of the elective offices so as to preserve the ballots for the hearing of the contest.

The provision of the statute heretofore cited (ch. 46, par. 17—20) provides that if any contest of election shall be pending in which the ballots may be required as evidence they shall not be disposed of. There is no statute or provision that provides that the election commissioners were under a duty to make a search for pending contests.

The difficulties and burden that we would place upon election commissioners and county clerks become apparent from the two examples that we cited of the President of the County Board of Cook county and a justice of the Supreme Court. We have held that they are civilly liable for a breach of their duty by failing to preserve and protect the ballots. This is clearly in the interest and for the benefit of protecting our representative form of government. To subject election commissioners and county clerks to this liability and then to say that there is no responsibility upon the part of an elector or candidate to give actual notice of the

547

filing of a contest but that the commissioners must at their peril seek out and ascertain whether such contests were filed would be a very harsh doctrine.

We therefore conclude that an elector or candidate who contests the election of a public office must give express notice to the election commissioners or county clerks of the filing of such action. This the plaintiff failed to do.

The judgment of the trial court is reversed.

Judgment reversed.

McCORMICK, P. J. and SCHWARTZ, J., concur.