HAROLD DIEHL *et al.*, Indiv. and as Ex'rs of the Estate of Archie Diehl, Plaintiffs-Appellants, v. POLO COOPERATIVE ASSOCIATION *et al.*, Defendants-Appellees.

Second District   No. 2—00—0834

Opinion filed March 18, 2002.

Clayton L. Lindsey and Kari A. Vanderzyl, both of Williams & McCarthy, of Oregon, for appellants.

Kevin P. Jacobs, of Costigan & Wollrab, P.C., of Bloomington, for appellees.

JUSTICE CALLUM delivered the opinion of the court:

Plaintiffs, Harold Diehl (Harold) and Aileen Diehl, individually and as executors of the estate of Archie Diehl, sued defendants, Polo Cooperative Association (PCA) and its general manager Donnie Milby, for personal injuries Harold allegedly sustained from exposure to a mixture of herbicides recommended by defendants for use on Harold's corn crops. The trial court granted defendants' motion for summary judgment on the basis of preemption by the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA) (7 U.S.C.A. § 136 *et seq.* (West 1999)). Plaintiffs appeal. We reverse and remand.

Harold owns and operates a grain farm. PCA sells and distributes chemicals and fertilizers to farmers. Harold had been a customer of PCA for approximately 14 years and frequently consulted PCA and Milby regarding the use of various chemicals in his farming operation. Milby had served as the general manager of PCA for over 10 years and held a custom applicator license for the application and recommendation of agricultural chemicals since 1984. On May 29, 1991, Harold consulted Milby concerning the selection of an herbicide to apply to

his corn crops that year. When Milby suggested that Harold use the same herbicide, Bicep, that Harold had used the prior year, Harold notified Milby that he wanted to eradicate triazine-resistant lamb's quarter weeds. Milby then advised Harold that he could combine Bicep with the herbicide Banvel to achieve this result. Milby indicated to Harold that the Bicep-Banvel mixture was "not labeled." Harold asked Milby if he had used this mixture in the past and Milby informed him that he had used it and that it was effective. Harold gave no indication to Milby that he was familiar with Banvel. Harold testified that Milby said that the mixture was "safe" and that he interpreted this to mean that the mixture was safe for crops, as opposed to safe for humans. However, Harold also testified that he assumed that the chemicals were safe for humans because he did not think that Milby would recommend a product to him that was not safe for humans and because Milby did not say anything about any dangers associated with the chemicals.

The Bicep label indicated that the two chemicals could be combined for application onto no-till corn. Milby recommended to plaintiff the amounts of each chemical to use in a single tank mixture. However, the proportions that Milby recommended were not those listed on the label.

The Banvel label contained a warning that users should avoid breathing spray mist and should not get the product in their eyes or on their skin or clothing. The Bicep label's precautionary statements provided that users should "[a]void breathing vapors or spray mists."

Weather conditions were breezy on the day that Harold was contemplating applying the Bicep-Banvel mixture to his crops. Harold telephoned Milby to ask him if he should apply the mixture on that day. Milby assured Harold that he could apply the herbicides under such weather conditions and advised Harold that it was urgent to do so or else it would be too late to help Harold's crops. Harold followed Milby's advice and spent the next 1½ to 2 days applying the mixture. He did not read either the Bicep or the Banvel labels prior to applying the mixture. Harold used a tractor and a trail-behind sprayer and spray nozzle to apply the herbicides to his crops. During the application, Harold wore a shirt and pants but no safety devices. Each time he turned the tractor, Harold drove through a vapor mist generated by the chemical application.

Following the application of the chemicals, Harold began to experience headaches, nausea, and muscle and joint pain in his arms and legs. He had never before experienced similar symptoms after any other chemical application.

Plaintiffs sued defendants, requesting damages for Harold's

personal injuries. Defendants moved to dismiss the complaint, arguing that FIFRA preempted plaintiffs' claim. The trial court denied the motion, finding that plaintiffs' claim could encompass (1) a failure to warn; (2) a failure to act to prevent foreseeable danger; or (3) an act negligently undertaken or performed. Defendants subsequently moved for summary judgment, arguing that (1) FIFRA preempted plaintiffs' claim; and (2) as a matter of law, plaintiffs could not establish that defendants' conduct proximately caused Harold's injuries. The trial court granted that motion, finding that plaintiffs' claim constituted a failure-to-warn cause of action and was preempted by FIFRA. The court did not address the proximate cause issue.

Plaintiffs appeal, arguing that (1) the trial court misconstrued their claim as a failure-to-warn claim and, thus, misapplied FIFRA; and (2) the pleadings and depositions raise a genuine issue of material fact as to whether Harold's conduct proximately caused his injuries.

■ Summary judgment is properly granted if the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there exists no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 374 (1998); see 735 ILCS 5/2—1005(c) (West 2000). The nonmovant need not prove its case at the summary judgment stage (*Bickerman v. Wosik*, 245 Ill. App. 3d 436, 438 (1993)) but must come forward with evidence that establishes a genuine issue of material fact (*Salinas v. Chicago Park District*, 189 Ill. App. 3d 55, 59 (1989)). We review *de novo* a grant of summary judgment. *Zekman*, 182 Ill. 2d at 374.

■ FIFRA regulates the sale, use, and labeling of pesticides. *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 991-92, 81 L. Ed. 2d 815, 825, 104 S. Ct. 2862, 2867 (1984). The statute describes the extent to which states may regulate pesticides:

"(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." 7 U.S.C.A. § 136v(a)(b) (West 1999).

In *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 120 L. Ed. 2d 407, 112 S. Ct. 2608 (1992), the Supreme Court held that the Federal

Cigarette Labeling and Advertising Act (Pub. Law 89—92, 79 Stat. 282, as amended, 15 U.S.C.A. §§ 1331 through 1340 (West 1982)) and its successor, the Public Health Cigarette Smoking Act of 1969 (1969 Act) (Pub. Law 91—222, 84 Stat. 87, as amended, 15 U.S.C.A. §§ 1331 through 1340 (West 1982)), preempted a plaintiff's state law claim seeking recovery for defendants' failure to warn of the hazards of cigarette smoking. *Cipollone*, 505 U.S. at 524, 120 L. Ed. 2d at 428, 112 S. Ct. at 2621. However, the Court held that the 1969 Act did not preempt those claims premised on the defendants' "testing or research practices or other actions unrelated to advertising or promotion." *Cipollone*, 505 U.S. at 524-25, 120 L. Ed. 2d at 428, 112 S. Ct. at 2622. Moreover, a plurality of the Court held that the 1969 Act did not preempt the plaintiff's claim for breach of an express warranty. *Cipollone*, 505 U.S. at 526-27, 120 L. Ed. 2d at 429, 112 S. Ct. at 2623. The statutory provision in *Cipollone* is similar to that in FIFRA. See *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir. 1993); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747 (4th Cir. 1993); *Papas v. Upjohn Co.*, 985 F.2d 516, 517-18 (11th Cir. 1993).

■ Courts have applied the *Cipollone* analysis to state tort law claims involving pesticides, and they have held that FIFRA preempts state tort actions premised on a failure to warn or on a breach of an implied warranty. See *Kuiper v. American Cyanamid Co.*, 131 F.3d 656, 666 (7th Cir. 1997) (off-label statement that essentially repeated label warnings is preempted by FIFRA); *Worm*, 5 F.3d at 748-49 (claims based on representations that repeated those made on labels and literature distributed with herbicide are preempted by FIFRA); *Papas*, 985 F.2d at 519-20 (claims challenging the adequacy of warnings of materials other than the label or packaging of a chemical necessarily imply that the labeling and packaging failed to warn the user and are, therefore, preempted by FIFRA; state law claims for breach of an implied warranty of merchantability are preempted by FIFRA to the extent that they depend upon inadequacies in labeling or packaging). But see *Malone v. American Cyanamid Co.*, 271 Ill. App. 3d 843, 850 (1995) (FIFRA does not preempt actions for breach of implied warranty based upon advertising). However, courts have held that FIFRA does not preempt actions based on express warranty claims or representations voluntarily made and that do not merely repeat label warnings. See *Prather v. Ciba-Geigy Corp.*, 852 F. Supp. 530, 532 (W.D. La. 1994); *Casper v. E.I. Du Pont De Numbers & Co.*, 806 F. Supp. 903, 909 (E.D. Wash. 1992).

In *Prather*, the plaintiff purchased an agricultural pesticide in an effort to rid his corn crops of Johnson grass. *Prather*, 852 F. Supp. at 531. He sued the manufacturer and seller of the chemical when the

pesticide failed to eradicate the Johnson grass and prohibited full production of his crops. *Prather*, 852 F. Supp. at 531. The plaintiff alleged that the defendants made recommendations concerning the amount of the chemical to apply to his crops and the benefits of the chemical over alternatives proffered by plaintiff. *Prather*, 852 F. Supp. at 531. Plaintiff also alleged that defendants failed to advise him of the possibility of adverse results associated with the use of the chemicals. *Prather*, 852 F. Supp. at 531. The court held that FIFRA did not preempt plaintiff's claims for breach of voluntarily undertaken warranties and redhibition of the sale of a defective pesticide. *Prather*, 852 F. Supp. at 532. "[W]here a pesticide manufacturer or retailer has voluntarily warranted a product's fitness for a particular purpose, courts have permitted plaintiffs to assert state law claims for breach of this warranty." *Prather*, 852 F. Supp. at 532 (citing cases).

■ Here, plaintiffs do not assert that defendants made representations that repeated any information on the Bicep or Banvel labels or in any product advertising. Rather, they argue that Milby was negligent in recommending an off-label combination without warning Harold of any dangers to humans. Because that claim does not depend on the content of the labels, FIFRA does not apply.

While defendants acknowledge that Milby's dosages were off-label, they assert that the labels' warnings remained operative and, therefore, that plaintiffs' claims essentially constitute failure-to-warn claims that are clearly preempted by FIFRA. We disagree. We fail to see how warnings on labels prepared by manufacturers to accompany certain specified applications can apply to any and all off-label chemical combinations. We conclude that a label's safety warnings do not remain operative when a retailer makes an off-label recommendation. Plaintiffs' claims, therefore, do not challenge the manufacturers' labels. A claim that does not challenge the labeling of a product is not preempted by FIFRA. *Papas*, 985 F.2d at 520; *Worm*, 5 F.3d at 747.

We note here that the trial court erroneously read the record. In its memorandum opinion, the court found that Milby's statements were not off-label statements because the Bicep label recommended tank-mixing Bicep with Banvel. However, in his deposition, Milby stated that the dosages that he recommended to Harold were *not* taken from the label. For these reasons, we reverse the trial court's grant of summary judgment for defendants on the preemption issue.

We now turn to the issue of proximate cause. The trial court did not address this issue. However, because we may affirm a grant of summary judgment on any basis supported by the record (*Castro v. Brown's Chicken & Pasta, Inc.*, 314 Ill. App. 3d 542, 552 (2000)), both parties address this issue, and so will we.

■ Ordinarily, proximate cause is a question of fact for the jury. *Castro*, 314 Ill. App. 3d at 553. However, it may be decided as a matter of law when reasonable people cannot draw divergent inferences from the undisputed facts. *Englund v. Englund*, 246 Ill. App. 3d 468, 477 (1993).

■ Proximate cause is primarily a question of foreseeability: a negligent act is a proximate cause of an injury if the injury is of a type that a reasonable person would see as a likely result of his or her conduct. *Masotti v. Console*, 195 Ill. App. 3d 838, 845 (1990). An injury will be found to be beyond the scope of the defendant's duty if it appears highly extraordinary that the breach of the duty should have caused the particular injury. *Masotti*, 195 Ill. App. 3d at 845.

Defendants argue that they are entitled to summary judgment because Harold's own conduct was the sole proximate cause of his injuries. They assert that Harold never discussed with Milby any safety issues associated with the chemicals or the method of applying the chemicals; that Harold never read the Bicep or Banvel label; and that Harold wore no safety devices when he applied the chemicals to his crops.

Plaintiffs respond that it was reasonably foreseeable that Harold would rely on Milby's advice to use the off-label combination and ignore the warnings on the Bicep and Banvel labels. Plaintiffs assert that Milby stated that his recommended mixture was "not labeled"; that he knew that Harold was not familiar with Banvel; that he assured Harold that the mixture had been used in the past successfully; and that, when Harold called Milby to discuss the breezy weather conditions, he told Harold that it was urgent that he apply the mixture on that day to save his crops.

■ We conclude that plaintiffs have presented sufficient evidence to establish a question of fact concerning whether Harold is responsible for his own injuries. Unless a plaintiff fails to present any facts to support his assertion that the defendant proximately caused the plaintiff's injury, proximate cause is a factual question to be decided by the trier of fact. *Masotti*, 195 Ill. App. 3d at 845; see also *Buchaklian v. Lake County Family Young Men's Christian Ass'n*, 314 Ill. App. 3d 195, 205 (2000) (question whether plaintiff's negligence was the sole proximate cause or a contributing cause of the injury is an issue for the jury to decide under principles of comparative negligence). For these reasons, defendants are not entitled to summary judgment on this basis.

The judgment of the circuit court of Ogle County is reversed, and the cause is remanded.

Reversed and remanded.

O'MALLEY and BYRNE, JJ., concur.