THE BOARD OF EDUCATION OF INDIAN PRAIRIE SCHOOL DISTRICT
No. 204, Du Page and Will Counties, Plaintiff-Appellant, v. THE DU PAGE
COUNTY ELECTION COMMISSION *et al.*, Defendants-Appellees.

Second District    No. 2—02—0985

Opinion filed July 15, 2003.

Stuart L. Whitt and Richard T. Petesch, both of Law Offices of Stuart L. Whitt, of Aurora, for appellant.

Mary E. Dickson and Patrick K. Bond, both of Bond, Dickson & Associates, P.C., of Wheaton, for appellees.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiff, Board of Education of Indian Prairie School District No. 204 (Board), appeals an order of the circuit court of Du Page County dismissing its complaint against defendants, Du Page County Election Commission (Commission), Dean Westrom, Jeanne McNamara, and Charlotte Mushow. Westrom, McNamara, and Mushow are election commissioners and are sued solely in their official capacities. For the reasons that follow, we reverse and remand this cause for further proceedings.

## I. BACKGROUND

Plaintiff planned to construct a new elementary school and two new middle schools, as well as make additions to some existing school buildings. In order to fund these projects, plaintiff sought authority to issue bonds in the amount of $88,800,000 and increase property taxes from 3.04% to 3.74%. It enacted resolutions directing the Commission to, *inter alia*, publish notice of the election at least 10 days, but no more than 30 days, prior to the election as provided for in the Election Code (Code) (10 ILCS 5/12—5 (West 2000)). Indian Prairie School District stretches through two counties. The Will County Election Commission published notice as requested; however, defendants did not publish notice until five days before the election, on February 22, 2001, and February 23, 2001. The election was held on February 27, 2001. Both measures received a majority of the votes.

Plaintiff discovered the Commission's error in May 2001. As a result, plaintiff's ability to secure necessary funds for its construction projects was jeopardized. Plaintiff thus sought and obtained corrective legislation from the legislature. On June 7, 2001, the Governor signed into effect an act that validated the election. Plaintiff spent $55,870 securing this legislation.

In the action below, plaintiff sought to recoup these expenses. The trial court dismissed plaintiff's complaint pursuant to section 2—615 of the Civil Practice Law (735 ILCS 5/2—615 (West 2002)), articulating two bases for its decision. First, the trial court concluded that section 12—5 of the Code (10 ILCS 5/12—5 (West 2000)) did not create a duty on the part of the Commission that ran to a private party. Second, the court found that, since there had never been an action filed to void the results of the referenda, plaintiff suffered no damages. As there

were no damages, the court reasoned, any amounts spent securing corrective legislation were not spent in mitigation of damages. Plaintiff then filed this timely appeal.

## II. ANALYSIS

Plaintiff contends that the trial court erred in dismissing its complaint. Plaintiff first argues that, because it had an interest distinct from that of the public as a whole, the Commission owed it a duty under the Code. Second, plaintiff contends that whether any damages were proximately caused by defendants' actions is a question of fact. Defendants contest both issues and additionally argue that, even if plaintiff is correct on these two points, any duty they owed was breached only if their conduct was willful. Defendants then argue that plaintiff did not allege that their failure to publish timely notice was willful.

■ Because this cause comes to us following a dismissal pursuant to section 2—615 of the Civil Practice Law (735 ILCS 5/2—615 (West 2002)), our review is de novo. *Safeway Insurance Co. v. Daddono*, 334 Ill. App. 3d 215, 218 (2002). All well-pleaded facts in plaintiff's complaint and all reasonable inferences capable of being drawn therefrom must be taken as true, and the allegation must be viewed in the light most favorable to plaintiff. *Weatherman v. Gary-Wheaton Bank of Fox Valley, N.A.*, 186 Ill. 2d 472, 491 (1999). The ultimate question is, of course, whether the complaint states a cause of action, and the complaint should not be dismissed unless it is clear that plaintiff cannot prove any set of facts that would warrant relief. *Board of Directors of Bloomfield Club Recreation Ass'n v. Hoffman Group, Inc.*, 186 Ill. 2d 419, 424 (1999). Furthermore, the existence of a duty raises a question of law. *Ziemba v. Mierzwa*, 142 Ill. 2d 42, 47 (1991).

■ Finally, before turning to the particular issues raised by the parties, we note that defendants repeatedly quote plaintiff's pleadings in another case filed in Will County. Defendants call these quotations admissions. Defendants do not, however, attempt to establish the elements of judicial estoppel (see *People v. Coffin*, 305 Ill. App. 3d 595, 598 (1999)) or otherwise explain why plaintiffs should be bound by arguments made in a different case. Moreover, we note that, even within the context of a single case, pleading in the alternative is permissible. 735 ILCS 5/2—613(b) (West 2002). Accordingly, we attribute no weight to these quotations.

## A. Duty

■ The trial court dismissed plaintiff's complaint, in part, because it believed that the Code established no duty to plaintiff on defendants' part. In its oral ruling, the trial court stated that it "was unable to

find a single recorded case in the history of Illinois where the negligence in following a statute gave rise to a cause of—a duty owed to a private party." Accordingly, the court determined that no duty was owed to plaintiff. We disagree. The principle that the violation of a statute can form the basis for a negligence action is well established in this state. See, *e.g.*, *Yates v. Shackelford*, 336 Ill. App. 3d 796, 802 (2002); *Illinois Bell Telephone Co. v. Plote, Inc.*, 334 Ill. App. 3d 796, 805 (2002); *Allstate Insurance Co. v. Winnebago County Fair Ass'n*, 131 Ill. App. 3d 225, 232 (1985).

■ When dealing with the obligations of a public entity, special considerations apply. A private cause of action may not be based upon a statute if the duty imposed runs to the public generally. *Arizzi v. City of Chicago*, 201 Ill. App. 3d 368, 371 (1990). Instead, for a private action to lie, the entity must owe a duty to the plaintiff distinct from any duty owed to the public as a whole. *O'Fallon Development Co. v. City of O'Fallon*, 43 Ill. App. 3d 348, 358-59 (1976). Moreover, since the abolition of sovereign immunity in this state (see *Walker v. Forest Preserve District of Cook County*, 27 Ill. 2d 538, 540 (1963)), the ratification of the Constitution of 1970, and the enactment of the Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/1—101 *et seq.* (West 2000)), "governmental units are now liable in tort on the same basis as private tortfeasors unless a valid statute dealing with tort immunity imposes conditions upon that liability." *Harinek v. 161 North Clark Street Ltd. Partnership*, 181 Ill. 2d 335, 345 (1998). Parenthetically, we note that defendants do not address whether the Tort Immunity Act has any bearing on this case, and we therefore express no opinion on this issue.

In the present case, we hold that the statute at issue imposed a duty upon defendants for plaintiff's benefit in addition to any duty that ran to the public as a whole. In *Stradford v. Reinecke*, 6 Ill. App. 2d 537 (1955), the court considered whether an election board owed a duty to a candidate to preserve ballots for an election contest. A provision of the Code stated that ballots shall be preserved for two months or, in the event of a contest, until it was resolved. See Ill. Rev. Stat. 1947, ch. 46, par. 17—20. The election board destroyed the ballots despite the plaintiff's contest of the election result. The defendants argued that any duty they had to preserve the ballots ran only to the public generally. The *Stradford* court first recognized that a candidate's interest in an election is "distinctly different from that of the public generally." *Stradford*, 6 Ill. App. 2d at 543. It recognized that, although the broad purpose of this provision of the Code was to safeguard to the people the right of suffrage, to prevent illegal voting, and to insure that the people's will was carried out, it served a second purpose.

*Stradford*, 6 Ill. App. 2d at 544. It also was intended to "furnish a new ground of contest to a defeated candidate." *Stradford*, 6 Ill. App. 2d at 544. Thus, *Stradford* teaches that a statute may serve multiple purposes, and where one of its purposes runs to an individual, that individual may base a cause of action upon the statute.

*Stradford* provides sound guidance for the resolution of the issue before us. Undoubtedly, the primary purpose of section 12—5 of the Code (10 ILCS 5/12—5 (West 2000)) is to ensure that the public is aware of an election. If this were the only purpose of the statute, defendants would owe plaintiff no duty. However, as the *Stradford* court did with the statute before it, we perceive a second purpose to section 12—5. It is part of the mechanism through which an entity submits an issue to the people for a vote. As such, when an entity, like plaintiff in the instant case, needs to accomplish something that requires the approval of the people, it must invoke the procedures set forth in the Code. One of the purposes of the Code in general, and section 12—5 in particular, is to allow entities to submit things to the people for an election. It is this purpose that gave plaintiff an interest distinct from that of the public in general, which, in turn, creates a duty upon defendants' part that runs to plaintiff.

■ Furthermore, as noted above, absent a grant of immunity "governmental units are now liable in tort on the same basis as private tortfeasors." *Harinek*, 181 Ill. 2d at 345. Applying traditional principles of the law of torts, it is clear that defendant owed plaintiff a duty. Relevant factors in determining whether a duty exists are: "the reasonable foreseeability of injury, the likelihood of such injury, the magnitude of guarding against the injury, and the consequences of placing that burden on the defendant." *Washington v. City of Chicago*, 188 Ill. 2d 235, 239 (1999). The final three factors weigh heavily in favor of imposing a duty. The likelihood of injury is relatively high. It is true that "inconsequential mistakes and omissions of election officials in performing mandatory duties of a precautionary nature will not invalidate the results of an election." *Whitsell v. Davis*, 67 Ill. App. 3d 962, 969 (1978). However, plaintiff's injury was not that the election was void; it was the threat that the election might have been invalidated, and the effect this threat had on plaintiff's ability to raise money and proceed with its construction projects. See 21 Ill. Jur. *Municipalities* § 13.2 (1995) ("Because the purpose of an opinion rendered by bond counsel is to provide assurance to prospective investors, bond counsel must render an objective opinion based on reasonable certainty, as opposed to plausible arguments"). The magnitude of guarding against the injury is low. All a defendant must do is check the calendar and make sure notice is timely published. Furthermore,

no actual consequences arise from placing the burden on defendants. An election board is required to do no more than it is already required to do under the statute.

■ Defendants base their argument primarily on the foreseeability of the injury. They argue that the only foreseeable result of their failure to publish timely notice is that a suit might be brought to void the election. Defendants conclude that because that has not occurred, plaintiff has not been damaged. Defendants ignore the effect that the possibility of a suit had on plaintiff's ability to secure financing for its projects. As such, we find defendants' argument unpersuasive. We similarly reject defendants' contention that since Will County published effective notice, substantial compliance was attained, and the result of the election was not void, as it too ignores the effect of the possibility of a suit upon potential investors and lenders. In fact, in their next argument, defendants concede that "[t]he lack of timely publication may have raised a question as to the validity of the election result."

Accordingly, we conclude that defendants owed plaintiff a duty under the circumstances of the present case. The trial court erred in concluding otherwise.

### B. Proximate Causation and Damages

The trial court found, and defendants reiterate here, that no suit was ever filed to void the election. Consequently, they reason, there were no damages proximately caused by their conduct. The trial court went on to find that any expenditures plaintiff made securing corrective legislation were not in mitigation of damages. We disagree.

■ Proximate cause contains two distinct requirements, legal cause and cause in fact. *Shannon v. Boise Cascade*, 336 Ill. App. 3d 533, 543 (2003). At issue here is legal cause. Legal cause turns on the issue of foreseeablity. *Jinkins v. Evangelical Hospitals Corp.*, 336 Ill. App. 3d 377, 382 (2002). Proximate cause is generally a question of fact. *Diehl v. Polo Cooperative Ass'n*, 328 Ill. App. 3d 576, 582 (2002). It becomes a question of law only when "there can be no reasonable differences in the inferences to be drawn by reasonable men from the undisputed facts." *Novander v. City of Morris*, 181 Ill. App. 3d 1076, 1078 (1989).

■ Initially, we reject the contention that plaintiff suffered no damages because no suit was brought seeking to have the election invalidated. At issue here are the expenses incurred by plaintiff in seeking curative legislation. Accordingly, the relevant question is whether these expenditures were reasonably foreseeable.

It seems plain enough to us that a reasonable person could conclude that they were. A reasonable person could easily conclude

that an investor or lender would be apprehensive about doing business with a municipality based on an election that could be challenged, especially considering that $88,800,000 is at stake. The referenda at issue explicitly dealt with matters of finance, which could put a reasonable person in defendants' position on notice as to the possible problems with investors that might follow. A reasonable person could also infer that investors probably would not be favorably disposed to substantial compliance arguments. Such a person could further conclude that plaintiff would take some steps to correct the situation. The legislature has the power to enact curative legislation (*People v. Reedy*, 186 Ill. 2d 1, 15 (1999)), and a tort victim has a duty to mitigate damages (*Williams v. Board of Education of Clinton Community Unit School District No. 15*, 52 Ill. App. 3d 328, 334 (1977)). Thus, it is not entirely surprising that plaintiff sought curative legislation. *Cf. Duignan v. Lincoln Towers Insurance Agency, Inc.*, 282 Ill. App. 3d 262, 268-69 (1996) ("A plaintiff can recover the attorney fees expended in an effort to cure the damage caused by the defendant, but may not recover fees expended in the action against the defendant").

In short, a reasonable person could foresee both that defendants' omission would cause certain problems for plaintiff in dealing with investors and that plaintiff would take some steps to correct the situation. We must therefore conclude that, accepting the allegations in plaintiff's complaint, a question of fact exists as to proximate cause.

## C. Mental State

■ Finally, as an alternate basis for affirmance, defendants argue that even if they owed plaintiff a duty and even if proximate cause and damages are questions of fact, plaintiff cannot prevail unless it proves that defendants' conduct was willful. Plaintiff has not alleged willful conduct in its complaint. It is true that we may affirm on any basis appearing in the record (*Witters v. Hicks*, 335 Ill. App. 3d 435, 445 (2002)); however, we find defendants' argument ill taken.

Defendants first rely on section 29—12 of the Code, which provides that a person who knowingly fails to comply with the Code is guilty of a Class A misdemeanor. 10 ILCS 5/29—12 (West 2000). Defendants assert that this provision evinces the legislature's intent that only knowing violations result in liability. However, defendants cite no authority for the proposition that a criminal provision should establish the mental state in a civil action. Obviously, criminal liability and civil liability are very different things, and criminal defendants are typically provided more protection than civil defendants. In sum, we find this argument unpersuasive.

Additionally, defendants rely on *Stradford*, which contains the following passage:

"For more than two centuries courts in countries with a representative form of government have given the highest possible degree of protection to a citizen's right to vote (Herring v. Finch, 2 Lev. 250 [1679], 83 Eng. Rep. 542), and, correlatively, to his rights as a candidate for public office (Sterling v. Turner, 1 Vent. 206 [1672], 86 Eng. Rep. 139). As early as 1849 by statute in this State a civil remedy for damages was provided to an elector deprived of his right to vote by the neglect or refusal of an election official. (Mills v. McCabe, 44 Ill. 194, 197.) Civil liability attached, however, in the absence of any statute where an election official wilfully deprived an elector of his right to vote. (Bernier v. Russell, 89 Ill. 60.) For cases in other jurisdictions see, generally, 153 A. L. R. 109 et seq. A civil action for damages has similarly been accorded under our law to a candidate wilfully injured in his candidacy by an election official. (Hill v. Carr, 186 Ill. App. 515.) See also Judd v. Polk, 267 Ky. 408, 102 S.W.2d 325; Larson v. Marsh, 144 Neb. 644, 14 N.W.2d 189; Frank v. Eaton, 225 App. Div. 149, 231 N. Y. Supp. 477; Schwartz v. Heffernan, 304 N. Y. 474, 109 N.E.2d 68; and cf. Moore v. Kessler, 59 Ind. 152; Dines v. People, 39 Ill. App. 565, 568. See also Restatement, Torts, sec. 865; also, generally, 153 A. L. R. 147 et seq. To the same effect are Strickfaden v. Zipprick, 49 Ill. 286; People for Use of Munson v. Bartels, 138 Ill. 322; Gage v. Springer, supra; and cf. People v. May, 251 Ill. 54." Stradford, 6 Ill. App. 2d at 545.

Thus, Stradford appears to have announced that civil liability attaches when a candidate is "wilfully injured in his candidacy by an election official." Stradford, 6 Ill. App. 2d at 545. However, for several reasons, we do not believe that it was the intent of the Stradford court to set forth such a sweeping rule.

First, we note that much of the discussion in Stradford concerns the magnitude of the burden of imposing a duty on a defendant under the unique circumstances of that case. See Stradford, 6 Ill. App. 2d at 546-47. The plaintiff argued that the defendant had a duty to ascertain whether a contest had been filed before it destroyed any ballots. Given the number of places where a challenge could be filed, the number of candidates participating in any given election, and the number of people who could bring such a challenge, the Stradford court concluded that placing such a burden on the defendant would be "very harsh." Stradford, 6 Ill. App. 2d at 547-48. Thus, it required that a candidate notify an election board of a challenge. On the facts of that case, it was eminently understandable that the court would require that the board be put on notice, which, in turn, would result in a higher mental state requirement.

More fundamentally, many of the cases relied on in the above-cited

passage from *Stradford* either do not support or clearly contradict the notion that only a willful violation will support a cause of action under the Code. For example, in *Moore v. Kessler*, 59 Ind. 152, 153 (1877), the court stated, "The acts of a board of canvassers are ministerial; and if they unlawfully fail to perform them, or perform them unlawfully, whereby a person is injured, they will be liable; and it is immaterial whether they acted maliciously, purposely or by mistake." *Strickfaden v. Zipprick*, 49 Ill. 286, 288 (1868), contains the following statement:

> "As to the modification of plaintiff's instructions, we are of opinion the court erred in striking out the words, 'The plaintiff may recover although the defendant acted in the utmost good faith.' The defendant was charged with a violation of a plain and imperative duty for which the good faith with which he acted, or failed to act, is not an element to be considered in the case."

Similarly, our supreme court stated in *People ex rel. Munson v. Bartels*, 138 Ill. 322, 328 (1891), "But where the duty imposed on an officer is purely ministerial, he will be held liable for an injury to another which results from his failure to perform it, or from his performance of it in a negligent or unskillful manner." *Frank v. Eaton*, 225 A.D. 149, 151, 231 N.Y.S. 477, 479 (1928), states "a public officer is liable in damages at the suit of a person injured if he neglects or refuses to perform ministerial acts as required." See also *Schwartz v. Heffernan*, 304 N.Y. 474, 482, 109 N.E.2d 68, 71 (1952). In *Judd v. Polk*, 267 Ky. 408, 412, 102 S.W.2d 325, 327 (1937), the court observed that "a clerk, whose failure to act has deprived one of his office, cannot defend on the ground that the one aggrieved failed to file statements which the clerk's own negligence rendered unnecessary and futile." Furthermore, *Mills v. McCabe*, 44 Ill. 194 (1867), does not address the question of willfulness, and *Dines v. People*, 39 Ill. App. 565 (1891), does so only in the context of a contempt proceeding.

That the *Stradford* court relied on so many cases that did not state that willfulness was essential to maintaining a cause of action for the wrongful conduct of an election official calls into question whether it was attempting to announce the broad rule advocated by defendants. We believe that it was not. Instead, it appears to us that the *Stradford* court was primarily concerned with the high burden that would have been placed on election officials under the unique facts of that case. Under those circumstances, requiring a heightened mental state is understandable. However, we reject the notion that such a heightened mental state is generally applicable in actions against election boards. *Cf. Harinek*, 181 Ill. 2d at 345 ("governmental units are now liable in tort on the same basis as private tortfeasors").

## III. CONCLUSION

In light of the foregoing, the order of the circuit court of Du Page County dismissing plaintiff's complaint is reversed, and this cause is remanded for further proceedings.

Reversed and remanded.

O'MALLEY and GILLERAN JOHNSON, JJ., concur.